NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2502-14T2

STEPHEN BARR,

     Plaintiff-Respondent,

  v.

BISHOP ROSEN & CO., INC.,

     Defendant-Appellant.

| |
|---|
| **APPROVED FOR PUBLICATION** |
| **October 26, 2015** |
| **APPELLATE DIVISION** |

_____

Argued September 29, 2015 — Decided October 26, 2015

Before Judges Fisher, Espinosa[1] and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2526-14.

Barry M. Bordetsky argued the cause for appellant (Law Offices of Barry M. Bordetsky, attorneys; Mr. Bordetsky, on the brief).

Brian E. Kasper argued the cause for respondent (Stark & Stark, attorneys; Mr. Kasper, of counsel and on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

---

[1]Judge Espinosa did not participate at oral argument but the parties have consented to her joinder to the panel without additional argument.

Defendant Bishop Rosen & Co., Inc., appeals the denial of its motion to compel arbitration, contending that — individually or collectively — documents executed by plaintiff Stephen Barr during his seventeen years of employment created a valid and enforceable arbitration agreement that precluded plaintiff's right to sue Bishop Rosen on claims alleging breach of contract and violations of New York statutes regarding commissions and wages. Because these documents fail to clearly evince an effective waiver of plaintiff's right to seek relief from Bishop Rosen in a judicial forum, we affirm.

I

Bishop Rosen is a brokerage firm that employed plaintiff as a stockbroker from sometime in 1997 to June 2014. As a condition of employment, plaintiff registered with the National Association of Securities Dealers, Inc. (NASD), now known as the Financial Industry Regulatory Authority (FINRA).[2]

---

[2]In 2007, the NASD merged with parts of the New York Stock Exchange Group into a single organization known as FINRA. Order Approving Proposed Rule Change Regarding Consolidation of the Member Firm Regulatory Functions of NASD and NYSE Regulation, Inc., 72 Fed. Reg. 42,169 (Aug. 1, 2007). As it exists now, FINRA is a self-regulatory organization of securities brokers and dealers subject to regulation by the Securities and Exchange Commission that performs financial regulation of member brokerage firms and has regulatory oversight over all securities firms that do business with the public. Ibid.

A-2502-14T2

In order to register with the NASD, plaintiff executed a Uniform Application for Securities Industry Registration or Transfer Form U-4 (Form U-4) on September 9, 1997, and another twelve years later, on July 8, 2009. Both these agreements contain arbitration clauses. Plaintiff also executed two amended Form U-4 documents, one on May 15, 2003, and the other on January 28, 2005; neither contained an agreement to arbitrate.

On October 27, 1999, the SEC approved NASD Rule 3080, which required entities such as Bishop Rosen to provide a model arbitration disclosure statement whenever asking an associated person such as plaintiff to sign a new or amended Form U-4. On or about April 17, 2000, at Bishop Rosen's request, plaintiff acknowledged receipt of a memorandum which referenced and explained Rule 3080's disclosure requirements. The memorandum otherwise stood alone; it existed separate and apart from any of the executed Form U-4's. Stated another way, it cannot be disputed that plaintiff acknowledged receipt of the 2000 memorandum three years after he signed the 1997 Form U-4 and nine years before he signed the 2009 Form U-4.

II

On or about November 23, 2009, Christine Sone, a former Bishop Rosen client, whose accounts were handled by plaintiff,

commenced a FINRA arbitration against both plaintiff and Bishop Rosen; she alleged state and federal securities law violations and other fraudulent conduct. During the Sone Arbitration, one attorney represented both Bishop Rosen and plaintiff.

Ultimately, the arbitrator denied Sone's claims but directed Bishop Rosen to pay the administrative fees, which included Sone's filing fee of $300 and the arbitrator's fee of $21,375. Throughout the Sone proceedings, plaintiff paid the legal defense costs associated with defending both himself and Bishop Rosen of approximately $214,549.65. It is not clear whether this was voluntary or whether Bishop Rosen compelled plaintiff to bear this expense; these payments came to Bishop Rosen both directly from plaintiff and through deductions from his salary and commissions. Plaintiff asserts that as a result of those deductions, he worked "for more than two years without receiving any pay for work performed for the benefit" of Bishop Rosen.

III

Plaintiff filed this civil action against Bishop Rosen in the Law Division on June 27, 2014, alleging breach of contract, violations of New York wage and compensation laws, unjust enrichment, quantum meruit, and breach of Bishop Rosen's alleged duty to indemnify him. Plaintiff later amended his complaint to

include two additional counts, one to confirm the Sone arbitration award, and the other for a declaratory judgment regarding the fees associated with the Sone arbitration.

Bishop Rosen moved to dismiss the amended complaint and compel arbitration. By way of a thorough written opinion, Judge Joseph P. Quinn dismissed the count that sought confirmation of the Sone arbitration award insofar as it sought an order precluding defendant from seeking indemnification from plaintiff. The judge, however, denied the motion to dismiss the remainder of the amended complaint, and he also denied the motion to compel arbitration.

Bishop Rosen filed a notice of appeal of this interlocutory order as of right, see R. 2:2-3(a), seeking reversal of the order insofar as it denied the motion to dismiss and refused to compel arbitration. We pause to observe that although the Rule permits an appeal as of right of "any order either compelling . . . or denying arbitration," it does not follow that other aspects of the order unrelated to the arbitrability determination, or other interlocutory orders entered in the action, are also appealable as of right. To the contrary, even when an interlocutory order is appealable as of right or is before us by leave, some other interlocutory order in the case does not become appealable as of right and is reviewable only in

the exercise of our sole discretion. See Edwards v. McBreen, 369 N.J. Super. 415, 419-20 (App. Div. 2004); Towpath Unity Tenants Ass'n v. Barba, 182 N.J. Super. 77, 81 (App. Div. 1981); see also Henry Heide, Inc. v. WRH Prods. Co., 766 F.2d 105, 112 (3rd Cir. 1985). Accordingly, we decline to consider that part of Bishop Rosen's appeal that seeks to overturn the trial judge's denial of its motion to dismiss. We consider only whether plaintiff was required to arbitrate any or all of the claims alleged without deciding whether any of those claims state a claim upon which relief may be granted.

IV

The existence of a valid and enforceable arbitration agreement poses a question of law, and as such, our standard of review of an order denying a motion to compel arbitration is de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013); Frumer v. Nat'l Home Ins. Co., 420 N.J. Super. 7, 13 (App. Div. 2011). We first briefly outline the applicable legal standards and thereafter consider the language employed by the parties to effectuate their agreement.

A

An agreement to arbitrate "must be the product of mutual assent, as determined under customary principles of contract

law." Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442 (2014), cert. denied, __ U.S. __, 135 S. Ct. 2804, __ L. Ed. 2d __ (2015). Mutual assent requires that the parties understand the terms of their agreement. Ibid. In considering whether an agreement includes a waiver of a party's right to pursue a case in a judicial forum, "clarity is required." Moore v. Woman to Woman Obstetrics & Gynecology, L.L.C., 416 N.J. Super. 30, 37 (App. Div. 2010). That is, the waiver "must be clearly and unmistakably established," Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001), and "should clearly state its purpose," Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993). And the parties must have full knowledge of the legal rights they intend to surrender. Knorr v. Smeal, 178 N.J. 169, 177 (2003). Although an arbitration clause need not identify "the specific constitutional or statutory right guaranteeing a citizen access to the courts" that are being waived, it must "at least in some general and sufficiently broad way" convey that parties are giving up their right to bring their claims in court or have a jury resolve their dispute. Atalese, supra, 219 N.J. at 447. An arbitration agreement that fails to "clearly and unambiguously signal" to parties that they are surrendering their right to pursue a

judicial remedy renders such an agreement unenforceable. <u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 444, 448.

In <u>Atalese</u>, the Court provided several examples of language sufficient to meet these expectations. For example, the Court referred to <u>Martindale</u>, where the Court had previously "upheld an arbitration clause because it explained that the plaintiff agreed 'to waive [her] right to a jury trial' and that 'all disputes relating to [her] employment . . . shall be decided by an arbitrator.'" <u>Id.</u> at 444. The Court also approved a clause we considered in <u>Griffin v. Burlington Volkswagen, Inc.</u>, 411 <u>N.J. Super.</u> 515, 518 (App. Div. 2010), where the parties, in "agreeing to arbitration," expressed their "understand[ing] and agree[ment] that they are waiving their rights to maintain other available resolution processes, such as a court action or administrative proceeding, to settle their disputes." <u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 445. And the Court endorsed a clause considered in <u>Curtis v. Cellco P'ship</u>, 413 <u>N.J. Super.</u> 26, 31 (App. Div.), <u>certif. denied</u>, 203 <u>N.J.</u> 94 (2010), where the parties agreed that "[i]nstead of suing in court, we each agree to settle disputes (except certain small claims) only by arbitration." <u>Atalese</u>, <u>supra</u>, 219 <u>N.J.</u> at 445.

These examples reveal the ease with which parties may craft enforceable waiver clauses. The key, as the Court recognized,

is clarity; the parties must know at the time of formation that "there is a distinction between resolving a dispute in arbitration and in a judicial forum." Ibid.; see also Rockel v. Cherry Hill Dodge, 368 N.J. Super. 577, 583-87 (App. Div.), certif. denied, 181 N.J. 545 (2004).

B

With these principles as our framework, we consider the language employed in this case and its impact on plaintiff's claims. As previously mentioned, plaintiff executed two Form U-4 agreements containing arbitration clauses — one in 1997 and the other in 2009 — that state, respectively:

> [1997:] I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions or by-laws of the organizations indicated in Item 10 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

> [2009:] I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the [the self-regulatory organization] indicated in Section 4 (SRO Registration) as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent jurisdiction.

We agree with Judge Quinn that these clauses failed to clearly and unambiguously inform plaintiff of his waiver of the right to pursue his claims in a judicial forum.

Although the 1997 and 2009 clauses state the parties' agreement to arbitrate any dispute, claim or controversy, they fail to "explain what arbitration is," nor do they "indicate how arbitration is different from a proceeding in a court of law." Atalese, supra, 219 N.J. at 446. As the Supreme Court observed, "an average member of the public may not know — without some explanatory comment — that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." Id. at 442. The clauses before us contain any waiver language remotely similar to those considered in Martindale, Griffin, and Curtis and approved in Atalese, supra, 219 N.J. at 444-45.

Consequently, Bishop Rosen is relegated to urging the importance of its April 17, 2000 memorandum, which was both submitted to plaintiff pursuant to NASD Rule 3080 (now known as FINRA Rule 2263), and required Bishop Rosen to provide a model arbitration disclosure statement whenever asking an associated person, such as plaintiff, to sign a new or amended Form U-4.[3]

_____

[3] NASD Rule 3080 provides in part:

> A member shall provide an associated person with the following written statement
> (continued)

Only this memorandum mentions that arbitration within the meaning of the Form U-4 includes a waiver of a judicial remedy.

It is noteworthy, however, that Rule 3080 required Bishop Rosen to provide plaintiff with such a disclosure whenever seeking an initial or amended Form U-4. Bishop Rosen failed to make this disclosure during the execution of plaintiff's amended 2003 and 2005 Form U-4 agreements, and failed to do so when obtaining plaintiff's new Form U-4 in 2009. The required disclosure was only made by way of the 2000 memorandum, which was a stand-alone document — an acknowledgment separate and

---

(continued)

        whenever the associated person is asked, to sign a new or amended Form U-4.

        The Form U-4 contains a predispute arbitration clause. It is in item 5 on page 4 of the Form U-4. You should read that clause now. Before signing the Form U-4, you should understand the following:

        (1) You are agreeing to arbitrate any dispute, claim or controversy that may arise between you and your firm, or a customer, or any other person, that is required to be arbitrated under the rules of the self-regulatory organizations with which you are registering. <u>This means you are giving up the right to sue a member, customer, or another associated person in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.</u>

        [Emphasis added.]

A-2502-14T2

apart from the Form U-4 agreements plaintiff executed years before and years after. The only document that contained the waiver language required by our jurisprudence — the 2000 memorandum — was not provided to plaintiff until three years after execution of the first arbitration agreement and nine years before the second.

Interestingly, the NASD warned Bishop Rosen and its other members that a failure to provide the mandatory disclosure could "risk[] an adverse decision in later litigation concerning any inadequacy in the disclosure." These words proved prophetic. We conclude that the 2000 memorandum did not fairly or adequately reform the language contained in the 1997 agreement or inform the language contained in the 2009 agreement and fails to animate Bishop Rosen's contention that plaintiff would have understood that either the 1997 or 2009 agreements were to be interpreted in light of the language of the 2000 memorandum.

The applicable securities regulation also required that Bishop Rosen make this disclosure prior to seeking an associated person's execution of a new or amended Form U-4. Consequently, the 2000 memorandum has no bearing on the 1997 Form U-4 that plaintiff executed. At best, when considering its introductory

language,[4] the memorandum suggests only that Bishop Rosen was advising plaintiff that he should understand when signing a Form U-4 <u>in the future</u> that he will concomitantly be waiving the right to sue Bishop Rosen in a judicial forum.[5]

This separate disclosure would likely have been adequate had Bishop Rosen simultaneously sought plaintiff's execution of a new Form U-4. But a new Form U-4 with an arbitration agreement was not sought until 2009, nine years after plaintiff received the memorandum. And, although the securities regulation required that Bishop Rosen again disclose to plaintiff what was stated in the 2000 memorandum when seeking the 2009 Form U-4, Bishop Rosen failed to comply. That failure alone was fatal to the contention that the 2009 arbitration agreement also contained an adequate waiver of plaintiff's right to sue Bishop Rosen in court. The passage of nine years from

---

[4] The first sentence of the 2000 memorandum states: "A member shall provide an associated person with the following written statement <u>whenever the associated person is asked to sign a new or amended Form U-4</u>" (emphasis added).

[5] The issue bears similarities to <u>Leodori v. Cigna Corp.</u>, 175 <u>N.J.</u> 293, 307, <u>cert. denied</u>, 540 <u>U.S.</u> 938, 124 <u>S. Ct.</u> 74, 157 <u>L. Ed.</u> 2d 250 (2003), where the Court held that an employee's signed receipt of the employer's handbook did not constitute agreement with its terms because the acknowledgement did not express that "the recipient has received <u>and agreed</u> to an arbitration policy." The 2000 memorandum also lacks a statement that plaintiff <u>agreed</u> to its terms. In fixing his signature to the document, plaintiff expressed only that he "read and understood the above disclosure."

disclosure to execution of the 2009 Form U-4 was too great to permit an understanding that the 2009 agreement incorporated language provided in 2000. Additionally, the 2000 memorandum refers to the NASD and the NASD rules; as mentioned earlier, by 2007, the NASD merged with parts of the New York Stock Exchange Group, to consolidate into FINRA. As a result, by the time plaintiff executed a Form U-4 in 2009, he was registering with a different organization, with amended rules, different by-laws, and a different corporate structure.

In short, the 2000 memorandum and the 2009 Form U-4 may not be fairly read together, as if executed at the same time. The memorandum merely directed plaintiff to keep in mind that if asked to execute an arbitration agreement at some point in the future — here, nine years later — the language used in that future document should be understood to mean he will be waiving his right to sue Bishop Rosen in a judicial forum. Even were we to assume simultaneousness is not essential, this passage of time was far too substantial to permit an assumption that the 2000 memorandum informed that to which plaintiff agreed in 2009.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2502-14T2