**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2349-17T2

TIAN K. REID,

     Plaintiff-Appellant,

v.

DCH AUTO GROUP, INC. and
FREEHOLD NISSAN LLC, d/b/a
DCH FREEHOLD NISSAN,

     Defendants-Respondents.

Argued October 10, 2018 – Decided November 8, 2018

Before Judges Gilson and Natali.

On appeal from Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2201-17.

Thaddeus P. Mikulski, Jr. argued the cause for appellant.

Michael C. McQueeny argued the cause for respondents (Genova Burns LLC, attorneys; Kathleen Barnett Einhorn, of counsel and on the brief; Michael C. McQueeny, on the brief).

PER CURIAM

This appeal involves a dispute concerning the scope of an arbitration provision. Plaintiff Tian K. Reid appeals from a December 15, 2017 order dismissing his complaint with prejudice and compelling arbitration. We reverse. Although plaintiff signed a job application containing an arbitration provision with his former employer, that provision did not state that it would continue to apply when, as here, plaintiff transferred employment to a separate affiliated company.

I

We take the facts from the record developed on the motion to compel arbitration. Between August 2006 and August 2015, plaintiff worked for three different automobile dealerships: DCH Kay Honda; DCH Academy Honda; and DCH Freehold Nissan. Each of those dealerships was a separate corporate entity, but because they were commonly owned they were affiliated companies. The employee relations manager of the owner-entity certified that the correct name for the owner-entity corporation is DCH Auto Group (USA) Inc., and in October 2014, that entity was acquired by Lithia Motors, Inc. We will refer to the owner-entity as DCH Auto.

Plaintiff first worked for DCH Kay Honda from August 2006 until June 30, 2008. Thereafter, plaintiff worked for DCH Academy Honda from July 1,

2008 until March 31, 2014. Finally, plaintiff worked for DCH Freehold Nissan from April 1, 2014 until August 26, 2015.

On February 1, 2008, plaintiff submitted an employment application for the position of finance and insurance director. At that time, plaintiff was working for DCH Kay Honda as its finance and insurance manager. The application had a blank space for the insertion of "the Company" to which plaintiff was applying for employment. That space, however, was left blank. Plaintiff certified that he could not recall "whether the application was submitted for any particular open positions at any DCH dealership, whether at DCH Academy Honda or any other dealership, or whether [he] submitted the application as a general request to Human Resources to be considered for a promotion." Nevertheless, it is undisputed that on July 1, 2008, plaintiff became the finance and insurance director at DCH Academy Honda.

The employment application plaintiff signed and submitted in February 2008 contained an arbitration provision. That provision stated that plaintiff and the Company agreed to arbitrate any dispute concerning plaintiff's employment. Specifically, the arbitration provision stated in relevant part:

> I acknowledge that the Company utilizes a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. . . . . I and the Company

both agree that any claim, dispute, and/or controversy (including but not limited to any claims of employment discrimination, harassment, and/or retaliation under Title VII and all other applicable federal, state, or local statute, regulation or common law doctrine) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (and/or its subsidiaries, affiliates, owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company . . . shall be submitted to and determined exclusively by binding arbitration.

The provision went on to provide that it was governed by "the Federal Arbitration Act" (FAA), 9 U.S.C. §§ 1 to 16, and any dispute would be submitted to an arbitrator "selected under the Rules of the American Arbitration Association[.]" The arbitration provision also stated: "I UNDERSTAND BY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY. I FURTHER UNDERSTAND THAT THIS BINDING ARBITRATION AGREEMENT IS A CONTRACT."

As already noted, from July 1, 2008 until March 31, 2014, plaintiff worked for DCH Academy Honda as the finance and insurance director. DCH Academy Honda was the business name used by the dealership. The corporate entity that

A-2349-17T2

owned that dealership was Daron Motors, LLC, a wholly-owned subsidiary of DCH Auto. While working at DCH Academy Honda, plaintiff received his compensation from Daron Motors, LLC.

In August 2011, DCH Auto issued an internal transfer policy. The policy stated, in relevant part:

> DCH has always encouraged transfers from within or from dealership to dealership. What's new is that we will now post all open positions on our Employee Website, www.TheDCHWay.com, to make it easier for our employees to be aware of current opportunities. . . . . Each open requisition has an internal application available when an employee registers through Sterling, our electronic applicant tracking system and identifies themselves as a Current DCH Employee. . . . . Submitting an application is not a guarantee of transfer.

On April 1, 2014, plaintiff transferred and began working at DCH Freehold Nissan. The registered corporate entity that owns DCH Freehold Nissan is Freehold Nissan, LLC, another wholly-owned subsidiary of DCH Auto. The parties do not dispute that the transfer was made under DCH Auto's internal transfer policy. No party, however, provided a copy of the "internal application." Nor does the record include a copy of the blank form application referenced in the policy. Thus, there is nothing in the record that shows that plaintiff signed a new arbitration agreement in connection with his transfer to DCH Freehold Nissan.

A-2349-17T2

On August 26, 2015, plaintiff was terminated from his employment with DCH Freehold Nissan. Just under two years later, on July 27, 2017, plaintiff filed a complaint against DCH Auto and DCH Freehold Nissan alleging discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49. Specifically, plaintiff asserted two counts: (1) discriminatory termination and (2) discriminatory retaliation.

In response, defendants filed a motion to compel arbitration and dismiss plaintiff's complaint. After hearing oral argument, the trial court granted that motion by order dated December 15, 2017. That same day, the court issued a written opinion.

The trial court first found that the application and arbitration provision plaintiff signed and submitted in February 2008 were submitted in connection with the position of finance and insurance director at DCH Academy Honda. The court then held that the arbitration provision continued to govern plaintiff's employment when plaintiff transferred to DCH Freehold Nissan. The court based that holding on the language in the provision stating that plaintiff was agreeing to arbitrate any employment dispute between himself "and the Company (and/or its subsidiaries, affiliates, owners, directors, officers,

managers, employees, agents, and parties affiliated with its employee benefit and health plans)[.]"

II

Plaintiff appeals from the order compelling arbitration and dismissing his complaint. We review such orders de novo. Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013). In that regard, the validity of an arbitration agreement is a question of law, and we conduct a plenary review of such legal questions. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014); Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015).

The arbitration provision signed by plaintiff stated that it was controlled by the FAA. The FAA applies to a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction[.]" 9 U.S.C. § 2. The FAA and "the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citing AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011) (citing Rent-

A-2349-17T2

A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (alteration in original) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP of Camden Cty. E., 421 N.J. Super. at 424). Accordingly, to be enforceable, an arbitration agreement must clearly state that the parties are agreeing to arbitrate and are giving up the right to pursue a claim in court. In that regard, our Supreme Court has explained:

> Mutual assent requires that the parties have an understanding of the terms to which they have agreed. "An effective waiver requires a party to have full knowledge of his [or her] legal rights and intent to surrender those rights." "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [his or] her claims and defenses litigated in court."
>
> [Ibid. (first quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003); then quoting NAACP of Camden Cty. E., 421 N.J. Super. at 425).]

In determining whether a matter should be submitted to arbitration, the court should evaluate (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 92. If the agreement is valid and the claims fall within the scope of the agreement, the FAA requires the court to direct the parties to proceed to arbitration. PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990), overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002).

Plaintiff contends that the arbitration provision is not valid because "the Company" was not identified. Accordingly, plaintiff argues that he cannot be compelled to arbitrate with an unknown entity and the arbitration provision is illusory. We are not persuaded by that argument. The material facts in evidence established that plaintiff submitted the employment application to become the finance and insurance director in February 2008, and several months later, on July 1, 2008, he became the finance and insurance director at DCH Academy Honda. While plaintiff contends that he does not recall specifically to whom he submitted the employment application, the employee relations manager for DCH Auto certified that the application was made to DCH Academy Honda.

A-2349-17T2

Moreover, the arbitration provision was clear in stating that plaintiff was agreeing to arbitrate, that he was waiving his right to go to court and have a jury trial, and that the binding arbitration would be conducted under the rules of the American Arbitration Association. Accordingly, plaintiff's agreement to arbitrate is valid.

Nevertheless, plaintiff's dispute with DCH Freehold Nissan does not fall within the scope of the arbitration provision he signed with DCH Academy Honda. Nowhere in the provision is plaintiff informed that if he transfers to a separate affiliated company, the provision will continue to govern. The language concerning affiliated companies in the arbitration provision is language relating to a dispute concerning plaintiff's employment relationship with DCH Academy Honda. In that regard, plaintiff agreed that he would resolve in arbitration any employment dispute with "the Company," that is, DCH Academy Honda. Specifically, the provision states that if plaintiff and DCH Academy Honda had an employment-related dispute, it would be subject to arbitration:

> I and the Company both agree that any claim . . . between myself and the Company (and/or its subsidiaries, affiliates, owners, directors, officers, managers, employees, agents and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection

10

whatsoever with my . . . employment by . . . the Company . . . shall be submitted to and determined exclusively by binding arbitration.

That language informs plaintiff that if he had a dispute concerning his employment with DCH Academy Honda and such a dispute involved an affiliated company, then the dispute would be subject to arbitration. That language does not state, however, that if plaintiff transferred to an affiliated company, the arbitration provision would continue to apply to disputes concerning his employment with the affiliated company. If defendant intended the provision to apply to future employment relationships between plaintiff and affiliates of DCH Academy Honda, then the language in the arbitration provision needed to reflect that intent.

Moreover, "the Company" is not defined to include affiliated companies. Instead, the reference to "affiliates" is made in connection with any dispute with "the Company (and/or its . . . affiliates . . .) arising from . . . my employment by . . . the Company[.]" Substituting DCH Academy Honda for "the Company," that provision reads:

> I and [DCH Academy Honda] both agree that any claim . . . between myself and [DCH Academy Honda] (and/or its . . . affiliates . . .) arising from, related to, or having any relationship or connection whatsoever with my . . . employment by . . . [DCH Academy Honda] . . .

11

shall be submitted to and determined exclusively by
binding arbitration.

That language neither clearly defines DCH Academy Honda to include affiliates, nor does it clearly inform an employee that a separate dispute concerning future employment with an affiliate of DCH Academy Honda will also be subject to binding arbitration.

Defendants contend that when plaintiff was internally transferred to DCH Freehold Nissan, the arbitration provision continued to govern. Nothing in the arbitration provision or DCH Auto's internal transfer policy, however, states that an existing arbitration provision will continue to govern if an employee transfers employment. As noted earlier, no party provided a copy of the "internal application," which is referenced in the DCH Auto internal transfer policy. DCH Auto also did not provide us with a copy of the blank form internal application. Consequently, there is nothing in the record to establish that the application used for internal transfers stated that any prior arbitration provision with one affiliated company continued to govern if the employee transferred to another affiliated company.

In short, plaintiff signed a valid arbitration provision with DCH Academy Honda. The scope of that provision, however, did not extend to subsequent employment at a separate affiliated company, such as DCH Freehold Nissan.

A-2349-17T2

Accordingly, we reverse the December 15, 2017 order dismissing plaintiff's complaint and compelling arbitration.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13                                                                      A-2349-17T2