**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3255-18T1

JOHN RICCIARDI,

      Plaintiff-Respondent,

v.

ABINGDON CARE &
REHABILITATION CENTER,
GREEN KNOLL CENTER,
OVERLOOK MEDICAL
CENTER, and ROBERT WOOD
JOHNSON UNIVERSITY
HOSPITAL AT SOMERSET,

      Defendants,

and

KINDRED HOSPITAL,

      Defendant-Appellant.

_____

Submitted September 19, 2019 – Decided October 23, 2019

Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1541-18.

Farkas & Donohue, LLC, attorneys for appellant (David C. Donohue, of counsel; Gary Warren Baldwin II, on the briefs).

Stark & Stark, PC, attorneys for respondent (Sherri Lee Warfel, of counsel; Alex J. Fajardo, on the brief).

PER CURIAM

Defendant Kindred Hospital appeals the February 19, 2019 order denying its motion to dismiss plaintiff John Ricciardi's complaint and compel arbitration. Because it is undisputed that the arbitration agreement was mixed in with a number of other admission documents, it was not explained to Ricciardi, nor was he given a copy, we affirm.

The facts are taken from the record on appeal and Ricciardi's unrefuted affidavit submitted in opposition to Kindred's motion. Ricciardi was diagnosed with multiple sclerosis (MS) and bipolar disorder in his late twenties. He was fifty-three years old when transferred to Kindred, and had required twenty-four-hour nursing home care for the thirteen years prior. Ricciardi has not worked in sixteen years, has not driven a car in the last thirteen, or ever owned a house. A brother holds his power of attorney. Ricciardi's complaint alleges that Kindred's facility and staff negligence caused him to develop multiple advanced stage pressure ulcers, resulting in "great pain, suffering, disability, loss of quality of life and medical expense."

When admitted, the nursing staff assessed Ricciardi, finding he responded appropriately to questions, was cooperative, followed instructions, and was not confused, lethargic, uncooperative, restless, or anxious. Although Ricciardi's severe medical conditions do have some effect on his cognition, he does not claim that he was cognitively impaired at the time. He had been administered various medications that affected his ability to concentrate, however, and at the time of admission he was dizzy, nauseous, and light-headed.

While being admitted, Ricciardi was presented with twelve admission documents requiring signature. The "Voluntary Alternative Dispute Resolution Agreement Between Patient And Hospital[,]" (arbitration agreement) was included in that packet. As instructed, Ricciardi signed the admission paperwork in twelve different places. The time noted by his signatures indicated he signed every document within one minute. Ricciardi was provided copies of three admission documents, but not of the arbitration agreement. This despite the fact the agreement stated his signature was not a precondition to treatment, and that he could cancel the arbitration agreement within five days.

The Kindred employee who walked Ricciardi through the process did not explain the arbitration agreement. He was only told he needed to sign all the

paperwork. Ricciardi's affidavit states he first learned of his waiver of his right to a judicial forum only when Kindred filed the motion to dismiss the complaint.

In deciding the motion, the judge relied on the fact Kindred did not refute Ricciardi's description of the manner in which he signed the document. The judge said:

> Every signature [on the documents] is noted to be signed at the exact time, which leads to an inescapable inference that [Ricciardi] did not read or comprehend anything besides a possible brief summary of everything. This is not a knowing and voluntary waiver of his legal rights. [Ricciardi's] statements in his affidavit as to what occurred upon admission are unrebutted and relied upon by this court in determining not to enforce the arbitration agreement.
>
> For unknown reasons, Kindred admittedly did not supply [Ricciardi] with a copy of the ADR agreement. If [Ricciardi] was provided a copy he could have at least had some time to read it and to deliberate upon it within the five-day window to rescind the contract and contact an attorney or a family member for consultation and advice.
>
> . . . .
>
> The issues are fact-sensitive. . . . [T]he ADR agreement in this matter is procedurally and substantively unconscionable as applied to [Ricciardi] when he presented himself for admission to Kindred on August 15, 2017. The [c]ourt declines to enforce the arbitration agreement under these circumstances, which are unique, frankly, to [Ricciardi], and you need to look

4

carefully at his affidavit to see what happened to him and what he realized was happening at the time.

On appeal, Kindred raises the following points:

POINT I – THE APPELLATE DIVISION HAS JURISDICTION OVER THIS MATTER BECAUSE THE TRIAL COURT ENTERED AN ORDER DENYING ARBITRATION.

POINT II – NEW JERSEY PUBLIC POLICY FAVORS ARBITRATION FOR RESOLVING DISPUTES INCLUDING THOSE ARISING IN HOSPITALS SUCH AS KINDRED HOSPITAL.

POINT III – THE CIVIL ACTION AGAINST KINDRED HOSPITAL SHOULD HAVE BEEN DISMISSED AND THE PARTIES' VOLUNTARY ALTERNATIVE DISPUTE RESOLUTION AGREEMENT SHOULD BE ENFORCED.

POINT IV – THE LAW DIVISION ERRED WHEN IT FOUND THERE EXISTED PROCEDURAL UNCONSCIONABILITY INVOLVED IN THE FORMATION OF THE AGREEMENT AT ISSUE.

POINT V – THE LAW DIVISION ERRED WHEN IT FOUND THERE EXISTED SUBSTANTIVE UNCONSCIONABILITY IN THE AGREEMENT AT ISSUE.

We address only one issue. We do not reach Kindred's other contentions, concluding that the problems with the formation of the contract were so consequential as to alone warrant denial of defendant's motion to dismiss and to compel arbitration. The issue does not require much discussion in a written

5

opinion, and additionally we rely on the judge's analysis of the matter. See R. 2:11-3(e)(1)(E).

We exercise de novo review of a trial court's legal decision on the enforceability of an arbitration clause. Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016). "In reviewing such orders, we are mindful of the strong preference to enforce arbitration agreements, both at the state and federal level." Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013).

It is black-letter law that arbitration is a favored means of dispute resolution both under federal and state law. Atalese v. U.S. Legal Servs. Grp., 219 N.J. 430, 440 (2014). States may, however, regulate arbitration agreements under general contract principles. Id. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)). Accordingly, arbitration clauses may be invalidated on grounds existing at law or equity that call for the revocation of any contract. Ibid.

An arbitration agreement must be the product of mutual assent. Id. at 442 (quoting NAACP of Camden Cty. East v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)). Mutual assent requires that all parties understand the terms of the agreement they have signed. Ibid.

"Moreover, because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" Id. at 442-43 (quoting Knorr v. Smeal, 178 N.J. 169, 177 (2003)). Any contractual waiver of rights, including arbitration provisions, must reflect that the parties have clearly and unambiguously agreed to the terms. Id. at 443. The parties must have full knowledge of their rights and show an intent to surrender those rights. Ibid. That did not occur here.

"An agreement to arbitrate 'must be the product of mutual assent, as determined under customary principles of contract law.'" Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605-06 (App. Div. 2015) (quoting Atalese, 219 N.J. at 442). "Mutual assent requires that the parties understand the terms of their agreement[,]" and where the "agreement includes a waiver of a party's right to pursue a case in a judicial forum, 'clarity is required.'" Barr, 442 N.J. Super. at 606 (quoting Moore v. Woman to Woman Obstetrics & Gynecology, LLC, 416 N.J. Super. 30, 37 (App. Div. 2010)).

Although the enforceability of an arbitration clause is reviewed de novo, we rely upon the court's factual findings — "considered binding on appeal when

supported by adequate, substantial and credible evidence." <u>Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1984).

Having reviewed the record, we conclude there is ample evidence supporting the trial court's findings of fact. And, as a matter of law, the arbitration agreement lacked the mutuality of assent necessary for it to be binding on both parties. Like Moore, the plaintiff in <u>Woman to Woman</u>, Ricciardi was not given a copy of the agreement. Ricciardi was not given an explanation of the agreement any more than was Moore. Ricciardi and Moore were simultaneously presented a number of forms related to medical treatment and the provision of services. Moore was not alerted by the person who obtained her signature about arbitration, nor was Ricciardi.

Because Kindred failed to give him a copy of the document, Ricciardi, like Moore, had no realistic opportunity in which to review the arbitration agreement or consult about it with others. In <u>Woman to Woman</u>, Moore had fifteen days to withdraw from the agreement, Ricciardi had only five. But since neither was given a copy of the document, or had any idea regarding its content, the time afforded to them was meaningless. As a practical matter, because neither plaintiff knew what they were signing, the amount of time in which to revoke made no difference.

8

Given the facts, as a matter of law, the agreement was unenforceable. Therefore, Kindred's remaining arguments do not require discussion. We thus affirm the judge's refusal to dismiss the complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3255-18T1