# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2752-20

E.C., a minor, by his guardians,
D.C. and S.C., and D.C. and
S.C., individually,

    Plaintiffs-Respondents,

v.

LEO INGLIMA-DONALDSON,
BRADLEY DONALDSON,

    Defendants-Respondents,

and

BLOOMFIELD BOARD OF
EDUCATION,

    Defendant-Appellant,

and

COUNTY OF ESSEX, and STATE
OF NEW JERSEY,

    Defendants.
_____

> **APPROVED FOR PUBLICATION**
>
> **December 16, 2021**
>
> **APPELLATE DIVISION**

Argued October 19, 2021 – Decided December 16, 2021

Before Judges Fisher, Currier and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1419-18.

Roshan D. Shah argued the cause for appellant (Anderson & Shah, LLC, attorneys; Roshan D. Shah, of counsel and on the briefs; Joseph E. Lanzot and Erin Donegan, on the briefs).

Robert R. Fuggi, Jr. argued the cause for respondent E.C., a minor by his guardians D.C. and S.C. (Fuggi Law Firm, PC, attorneys; Robert R. Fuggi, Jr., of counsel and on the brief; Michael R. Napolitano, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In 2019, the Legislature expanded public-entity civil liability for claims based on sexual assaults and other sexual misconduct by enacting N.J.S.A. 59:2-1.3(a), which disables in those instances the immunities provided by the Tort Claims Act.[1] In this action, plaintiff E.C. alleges he was the victim of the sexual misconduct of a teacher employed by the Bloomfield Board of Education. In appealing the partial denial of its summary judgment motion, the board argues that this new statute does not apply unless the public entity – and not just the public employee – has engaged, in the words of the statute, in "willful, wanton

---

[1] N.J.S.A. 59:1-1 to 12-3.

or grossly negligent" conduct. The board also argues that even if triggered, N.J.S.A. 59:2-1.3(a) deprives the public entity only of its Tort Claims Act immunities, and not two defenses under the Act – the verbal threshold, N.J.S.A. 59:9-2(d), and the declaration that a public entity "is not liable for the acts or omissions of a public employee constituting a crime . . .," N.J.S.A. 59:2-10 – that the board argues are not immunities and remain applicable. We agree the verbal threshold is not an immunity and applies here, but we otherwise reject the board's arguments and affirm the denial of summary judgment.

I

The board hired defendant Leo Inglima-Donaldson in May 2008 to begin working as a teacher at Bloomfield High School in September 2008. As part of the hiring process, the board conducted a criminal background check on Inglima-Donaldson; no red flags went up. During his employment, Inglima-Donaldson consistently received "excellent" teaching evaluations and was named head coach of the high school's cross-country track team in 2014.

In October 2016, law enforcement learned J.M., a sixteen-year-old, had disclosed to his therapist that he and Inglima-Donaldson had been sexually involved. Inglima-Donaldson was arrested, and the board suspended and ultimately terminated his employment. Inglima-Donaldson was indicted in June

3

2017 and charged with, among other things, aggravated sexual assault and endangering the welfare of J.M. and another minor, K.F.

During the investigation, law enforcement officials obtained statements from eight members of the track team, including plaintiff E.C., who was attending Bloomfield High School when the events involving J.M. and K.F. occurred. During the initial investigation, E.C. did not report anything to the prosecutor's office, but he later described several instances in which Inglima-Donaldson engaged in lewd and inappropriate conduct:

- in December 2015 or January 2016, Inglima-Donaldson was playing "hide and seek" with the team with the lights off and his pants down;

- in December 2015 or January 2016, Inglima-Donaldson drove E.C. home from practice and when they were alone, he put his hand on E.C.'s thigh and groin in a sexual manner;

- in late May or early June 2016, Inglima-Donaldson said after practice, "let's all get naked and go home";

- in late summer of 2016, Inglima-Donaldson and his partner brought the team members to a friend's house, where Inglima-Donaldson undressed and jumped in the pool, asking the student team members to join him;

- in October 2016, while on a team run, Inglima-Donaldson had the student team members change shorts in front of him; and

4

- in October 2016, Inglima-Donaldson brought student team members back to his home after practice and had them play "naked twister."

More than a year after Inglima-Donaldson's October 2016 arrest, E.C.'s parents filed this action for damages on his behalf and their own behalf. After a motion to dismiss, the completion of discovery, and a motion for summary judgment, only one claim remained[2]: plaintiffs' claim that the board should be held vicariously liable for Inglima-Donaldson's actions. In denying summary judgment on that claim, the trial judge determined that: N.J.S.A. 59:2-1.3(a)(1) was triggered by Inglima-Donaldson's wrongful acts; this triggering deprived the board of its Tort Claims Act immunities; and N.J.S.A. 59:2-10 and N.J.S.A. 59:9-2(d) are immunities and therefore do not apply to E.C.'s claims.

---

[2] Plaintiffs' complaint contained twenty-four counts. The board's motion to dismiss eliminated all but seven counts, which asserted: the board's negligent hiring, supervision, and retention of Inglima-Donaldson; the board's vicarious liability for Inglima-Donaldson's actions; negligent infliction of emotional distress on E.C.; negligent infliction of emotional distress on D.C. and S.C.; and loss of consortium. On the summary judgment motion's return date, plaintiffs' counsel advised of the withdrawal of the consortium claim. The judge granted summary judgment in the board's favor on all the other claims except the vicarious liability claim.

A-2752-20

We granted leave to appeal to consider whether the trial judge accurately construed these statutes when he denied in part the board's summary judgment motion.

II

N.J.S.A. 59:2-1.3(a) was one part of a group of laws enacted to expand the rights of victims of sexual assaults and other sexual misconduct. Along with this amendment to the Tort Claims Act, the Legislature provided a significantly greater time period in which a minor victim of sexual misconduct may commence a civil action. See N.J.S.A. 2A:14-2(a); N.J.S.A. 2A:30B-6; N.J.S.A. 2A:61B-1. In addressing the fact that victims might also encounter sexual misconduct involving public entities and public employees, the Legislature disabled Tort Claim Act immunities in circumstances defined by N.J.S.A. 59:2-1.3(a) and eliminated the procedural notice-of-claim requirements in cases like this. See N.J.S.A. 59:8-3(b). We thus consider the meaning and scope of N.J.S.A. 59:2-1.3(a) as illuminated by the Legislature's stated desire to expand the rights of victims of sexual assaults and other sexual misconduct.

To further this intent, the Legislature enacted the statute in question,[3] declaring that "[n]otwithstanding any provision of" the Tort Claims Act "to the

---

[3] The Legislature initially enacted a version far less complex than that now in effect. The original version stated, in its entirety:

> Notwithstanding any other provision of law to the contrary, including but not limited to the "New Jersey Tort Claims Act," N.J.S. 59:1-1 et seq., a public entity is liable in an action at law for an injury resulting from the commission of sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in [N.J.S.A. 2A:30B-2], or sexual abuse as defined in [N.J.S.A. 2A:61B-1].
>
> [L. 2019, c. 120 (May 13, 2019).]

The amended version, L. 2019, c. 239 (Aug. 9, 2019), which is the version now in effect, significantly revamped the same concept in light of Governor Murphy's statement at the time that he signed the bill into law based on the Legislature's commitment "to introduce and swiftly pass a bill that will correct an error . . . relating to the liability of public entities." Governor's Statement Upon Signing Senate Committee Substitute for Senate Bill No. 477 (May 13, 2019). That error, according to the Governor's statement, was that the original version did not "clarify[] that public entities should be held to the same standard of liability that is applied to religious and nonprofit organizations." Ibid. As we will shortly demonstrate, this statement further reveals the error in the board's argument.

The new version, which included the "willful, wanton and grossly negligent" standard, also broke down its limitation of the New Jersey Tort Claims Act broadly described in the May 13, 2019 version into two parts – subsections (a) and (b) – and then broke subsection (a) into two parts – subsections (1) and (2) – that are quoted in the text above.

7

contrary," Tort Claims Act immunities would not apply to insulate from civil

liability:

> (1) . . . a public entity or public employee . . . as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined [in N.J.S.A. 2A:30B-2], or sexual abuse as defined in [N.J.S.A. 2A:61B-1] being committed against a person which was caused by a willful, wanton or grossly negligent act of the public entity or public employee; and

> (2) . . . a public entity . . . as a result of a sexual assault, any other crime of a sexual nature, a prohibited sexual act as defined in [N.J.S.A. 2A:30B-2], or sexual abuse as defined in [N.J.S.A. 2A:61B-1] being committed against a minor under the age of 18, which was caused by the negligent hiring, supervision or retention of any public employee.

The focus here is on subsection (1)[4] and on the board's argument that the

trial judge incorrectly interpreted this statute by holding that a public entity's

immunities will be disabled whenever a public employee's conduct was willful,

---

[4] As noted earlier, the trial judge granted summary judgment in favor of the board on plaintiffs' negligent hiring, supervision, and retention claims. Plaintiffs did not seek leave to appeal those parts of the order that granted summary judgment, and, therefore, the soundness of those determinations is not before us at this time but certainly not foreclosed from review once a final judgment is entered in the trial court. The same is true for all other interlocutory orders entered in the trial court; our discretionary allowance of an interlocutory appeal does not give any party either the right or obligation to file an appeal of other interlocutory orders. See Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015).

wanton or grossly negligent. The board contends that for a public entity to lose its immunities under this provision, the public entity's conduct must also be willful, wanton or grossly negligent. The board argues this despite the statute's declaration that such conduct need be attributed only to "the public entity or public employee." N.J.S.A. 59:2-1.3(a)(1) (emphasis added). We find the board's logic to be faulty for a few reasons.

First, as we just noted, the statute's plain language expresses that the public entity's immunities will be disabled when the sexual offense was caused by the willful, wanton or grossly negligent conduct of the public entity "or" public employee. Ibid. In essence, the board would have us interpret this statute as if the conjunctive "and" appears in place of the disjunctive "or."[5] We disagree and assume the Legislature meant what it said when it declared that the willful, wanton or grossly negligent conduct could be provided by either the public

[5] Although the board has not made the argument, we are mindful there have been times when our courts have recognized a legislative intent to use "and" and "or" interchangeably. See Howard v. Hardwood's Restaurant Co., 25 N.J. 72, 88 (1957); Murphy v. Zink, 136 N.J.L. 235, 239 (Sup. Ct. 1947), aff'd o.b., 136 N.J.L. 635 (E. & A. 1948). This particular statute, however, was the subject of an almost immediate revision, see n.3, above, with, among other things, the phrase "the public entity or public employee" being inserted after a description of the type of claim that would trigger the statute. This strongly suggests to us that the Legislature was focused on the narrow task before it after enacting a version of this statute that was immediately recognized as in need of revision.

9

employee or the public entity. It is not our role to "rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002).

Second, the board invokes the tenet of statutory construction that "full effect should be given, if possible, to every word of a statute" and courts should "[]not assume that the Legislature used meaningless language." Gabin v. Skyline Cabana Club, 54 N.J. 550, 555 (1969); see also McCann v. Clerk of Jersey City, 167 N.J. 311, 321 (2001). The board argues the phrase "willful, wanton or grossly negligent" – if attributable to only the public entity or public employee – is rendered redundant here. Stated another way, the board argues that if the "willful, wanton or grossly negligent" requirement is satisfied when only a public employee has so acted, the phrase becomes unnecessary because the statute also depends on the commission of a sexual assault or any other crime of a sexual nature, all of which inherently carry that same or more egregious state of mind. By including the "willful, wanton or grossly negligent" phrase after describing the types of offenses that trigger N.J.S.A. 59:2-1.3(a)(1), the board argues the Legislature must have meant that the phrase would apply to both public entities and public employees.

It may be true the phrase "willful, wanton or grossly negligent" becomes unnecessary when a public employee is the sex offender, but subsection (1) encompasses much more than that particular instance. For example, subsection (1) would apply when a public entity is an occupier of real property – like a school – and provides woefully inadequate security, thereby allowing a predator to enter the school and commit a sexual crime against a student. In that circumstance, the acts or omissions of the public entity would have to be assessed through application of the willful, wanton or grossly negligent standard. And all the language of subsection (1) has meaning in that circumstance: the sex crime element would be provided by the outsider's unlawful act, and the plaintiff would then need to demonstrate the public entity's willful, wanton or grossly negligent conduct.

Friedman v. Martinez, 242 N.J. 450 (2020) provides another helpful example. If the public entity is the owner of a building that hires an outside contractor to provide janitorial services, and a janitor commits a sexual offense against an individual to whom the public entity owed a duty of care, subsection (1)'s requirement of a sex crime would have been met by the non-public-employee offender and the right of the public entity to immunity under subsection (1) would turn on whether its failure to protect its employees was

11

willful, wanton, or grossly negligent. In these examples, there may be no public employee at fault; the requirement urged by the board – that a plaintiff must show both the public entity <u>and</u> a public employee engaged in willful, wanton or grossly negligent conduct – would be insurmountable, and the disabling of Tort Claims Act immunities in that situation would be illusory. There is nothing in the statute or its legislative history to suggest the Legislature intended such an understanding of N.J.S.A. 59:2-1.3(a)(1).

In short, it may be true that when the sex offender is a public employee, parts of the statute prove unnecessary to the way in which the statute functions, but it does not logically follow that we should twist the meaning of the Legislature's otherwise unambiguous use of the disjunctive to make those sometime redundant words fit this one instance. As we have shown, there are other circumstances in which all the words and phrases have meaning and render perfectly sensible the Legislature's use of the word "or." If we were to adopt the board's suggested interpretation of N.J.S.A. 59:2-1.3(a)(1) so that it might more comfortably fit the public-employee-as-sex-offender situation, we would make more difficult if not insurmountable a plaintiff's pursuit of the remedy provided in N.J.S.A. 59:2-1.3(a)(1) in all other instances.

We reject the board's argument. By disabling Tort Claims Act immunities in sexual misconduct cases, the Legislature undoubtedly intended to make the plaintiff's pursuit of a remedy realistic rather than illusory.[6]

Third, as noted earlier, n.3, above, when the Governor signed into law the original abbreviated version of N.J.S.A. 59:2-1.3(a), he did so with the assurance from the bill's sponsors that it would introduce and swiftly pass a bill that would "correct an error" about public entity liability. The Governor viewed the May 2019 version of N.J.S.A. 59:2-1.3(a) as "inadvertently fail[ing] to establish a standard of proof for cases involving claims filed against public entities" and that the new bill would "correct this omission by clarifying that public entities should be held to the same standard of liability that is applied to religious and nonprofit organizations," with the added comment that "[a]pplying a different standard would be unjustified." Governor's Statement Upon Signing Senate Committee Substitute for Senate Bill No. 477 (May 13, 2019).

---

[6] The Legislature understood that this provision would increase the liability of public entities. The Office of Legislative Services reported to the Legislature that the bill would "expose the State, school districts, and local units of government to civil claims" and that there would be an added fiscal impact for, among other things, "substantial settlements and judgments against affected governments." Assembly Budget Committee Statement with Committee Amendments, Assembly Bill No. 5392 (June 17, 2019).

N.J.S.A. 2A:53A-7 was amended in May 2019 with the other changes to the laws concerning the claims of sexual offense victims. The amendments to this statute, however, retained the existing declaration that immunity would not be granted to religious or nonprofit organizations for damage "caus[ed] . . . by a willful, wanton or grossly negligent act of commission or omission, including sexual assault [and] any other crime of a sexual nature." N.J.S.A. 2A:53A-7(c).[7]

In a slightly different way, this statute describes the state of mind and then describes the types of acts included rather than, as with N.J.S.A. 59:2-1.3(a)(1), where the wrongful sexual acts that disable Tort Claims Act immunity are delineated and then followed by a description of the same necessary state of mind. The way in which the Legislature described when a religious or nonprofit organization will not be immune more clearly demonstrates that the standard of care can be supplied by the sexual offense (as N.J.S.A. 2A:53A-7(c) states, the standard of care "includ[es]" the sexual offenses described) and does not need to stand alone or separate from the sexual offense. We are satisfied from the intent revealed by the Governor's statement and by N.J.S.A. 59:2-1.3(a)(1) itself, that when the wrongful state of mind is provided by the public employee's sexual

---

[7] N.J.S.A. 2A:53A-7(c) was amended to include within this description of triggering sexual offenses, the prohibited sexual act defined in N.J.S.A. 2A:30B-2, and sexual abuse as defined in N.J.S.A. 2A:61B-1.

offense, there is no need for a plaintiff to establish that the public entity also engaged in willful, wanton or grossly negligent conduct.

Fourth, subsection (2) of N.J.S.A. 59:2-1.3(a) further reveals that the Legislature did not seek to create such a high bar to the disabling of Tort Claims Act immunities for public entities in subsection (1). When considering the disabling of immunities in a claim against a public entity – regardless of whether the crime was committed by a public employee – arising from the public entity's hiring, supervision or retention of any public employee, the Legislature imposed on the public entity only a simple negligence standard. This seems wholly inconsistent with the interpretation of subsection (1) offered by the board that both the involved public employee <u>and</u> the public entity must be found to have engaged in willful, wanton or grossly negligent conduct to disable their immunities. The Legislature did not impose that high standard on public entities in subsection (2), a fact that strongly suggests the Legislature had no intention to impose that standard in all situations to which subsection (1) would apply as the board's argument that "or" be viewed as "and" in subsection (1) would require.

In the final analysis, our decisions rests on the well-established precept that statutes must be interpreted to "discern and effectuate" the legislative intent.

A-2752-20

Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). This requires consideration of the statute's plain language, which is best understood when the words used are given "their ordinary meaning and significance." DiProspero v. Penn, 183 N.J. 477, 492 (2005). We conclude that while, in some instances, a portion of N.J.S.A. 59:2-1.3(a)(1) may be redundant, the entire provision – when understood in light of the various types of situations in which it will apply – sensibly and reasonably imposes an obligation on a plaintiff to show the "willful, wanton or grossly negligent" conduct of only the public entity "or" public employee, but not both – just as the statute expressly declares. We assume that the Legislature intended that courts would interpret the word "or" appearing in subsection (1) as meaning "or."

III

In permitting this interlocutory appeal we not only sought to determine the scope of N.J.S.A. 59:2-1.3(a)(1), but also whether N.J.S.A. 59:2-10 and N.J.S.A. 59:9-2(d) should be understood to be immunities, which would render them inapplicable, or merely as limitations of liability, which would still apply to claims like this.

The word "immunity" is not defined by the Tort Claims Act, and N.J.S.A. 59:2-1.3(a) does not specify what provisions of the Tort Claims Act it intended

16

to disable. N.J.S.A. 59:2-1.3(a)(1) states only that the "immunity from civil liability" provided by the Tort Claims Act would not apply in cases in which a sexual assault or other sexual crime formed the basis for the complaint. Nevertheless, we proceed by assuming the phrase "immunity from civil liability" was intended by the Legislature to mean exactly what it suggests: an "exemption from a duty [or] liability." Black's Law Dictionary 898 (11th Ed. 2019). This view comports not only with common usage and dictionary definitions but also with how the word "immunity" has been historically understood by courts. See McDonald v. City of Chicago, 561 U.S. 742, 813-15 (2010).

Since an immunity is an exemption from liability, and not a limitation of liability, we examine the two provisions of the Tort Claims Act that the board claims are not immunities. We conclude that N.J.S.A. 59:2-10 is an immunity but N.J.S.A. 59:9-2(d) is not.

The board's argument about N.J.S.A. 59:2-10 has no merit. The board relies heavily if not exclusively on the statute's label – "Public employee conduct – Limitation on entity liability" (emphasis added) – but this argument exalts form over substance. We are instead persuaded by the statute's text: "A public entity is not liable for the acts or omissions of a public employee constituting a crime, actual fraud, actual malice, or willful misconduct." Ibid. (emphasis

added). This statute does not express when a public entity will be liable for the wrongful conduct of its employee or to what extent; it states, without exception, that a public entity will not be held liable for, among other things, an employee's crimes. To hold that N.J.S.A. 59:2-10 remains applicable in those cases in which N.J.S.A. 59:2-1.3(a)(1) also applies would leave in place the very obstacle the Legislature intended to remove. We cannot imagine the Legislature intended such a result.

On the other hand, we agree with the board that N.J.S.A. 59:9-2(d) is not an immunity but only a limitation on liability since it states that "[n]o damages shall be awarded against a public entity or public employee for pain and suffering resulting from an injury" with the added proviso that

> this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

> [Emphasis added.]

By its very language N.J.S.A. 59:9-2(d) does not purport to free a public entity from liability. It instead limits the damages that may be awarded once a public entity is held liable by precluding damages for pain and suffering unless certain circumstances are met. Because this verbal threshold only impacts the award

18                                                                    A-2752-20

that may result from a claim and not whether the claim may be maintained against the public entity, we reject the argument that N.J.S.A. 59:9-2(d) is an immunity.

IV

The judge incorrectly determined that N.J.S.A. 59:9-2(d) is an immunity but he also alternatively found plaintiffs provided sufficient evidence of a permanent injury to hurdle the verbal threshold. That alternate disposition prompted the parties to argue here about how the verbal threshold impacts this case. They also argue whether the board can be held vicariously liable in these circumstances; the board claims the trial judge should have followed the reasoning of Davis v. Devereaux Found., 209 N.J. 269 (2012), and plaintiffs assert the judge properly applied the principles announced in Hardwicke v. Am. Boychoir Sch., 188 N.J. 69 (2006).

Although our order did not limit the scope of the arguments the parties could present in this interlocutory appeal, our intention in granting leave to appeal was to resolve the novel questions about the meaning and impact of N.J.S.A. 59:2-1.3(a) in cases like this and whether N.J.S.A. 59:2-10 and N.J.S.A. 59:9-2(d) are immunities or limitations of liability. Having resolved the statutory interpretation issues, we decline at this time to consider the

19

remaining issues about how our interpretation will impact this claim. In so holding, we acknowledge that the parties retain the right to seek appellate review of those other issues on entry of a final judgment in the trial court.

\* \* \*

We lastly observe that the board's arguments were not entirely implausible and N.J.S.A. 59:2-1.3(a) could have been drawn with greater precision. We take comfort in the knowledge that if we have misconstrued its intent, the Legislature has the power to clarify its intent by amendatory enactments. See Plastic Surgery Ctr., PA. v. Malouf Chevrolet-Cadillac, Inc., 241 N.J. 112, 113 (2020). Nevertheless, having carefully considered the parties' arguments, we conclude that:

- N.J.S.A. 59:2-1.3(a)(1) was intended to deprive public entities of their Tort Claims Act immunities when the sexual misconduct suffered by the plaintiff was caused by a willful, wanton or grossly negligent act of the public entity or public employee, as the statute expressly states;

- N.J.S.A. 59:2-10 is a Tort Claims Act immunity that is disabled in cases like this by N.J.S.A. 59:2-1.3(a)(1); and

- N.J.S.A. 59:9-2(d) is not a Tort Claims Act immunity and remains applicable in cases like this.

20

We also exercise our discretion in choosing not to consider now either the viability of plaintiffs' claim that the board may be held vicariously liable or the impact of N.J.S.A. 59:9-2(d) on plaintiffs' claim; we leave those issues to further development in the trial court.

We affirm the denial of the board's summary judgment motion and remand for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2752-20