NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-5798-17T4

MEDFORD TOWNSHIP
SCHOOL DISTRICT,

     Plaintiff-Respondent,

v.

SCHNEIDER ELECTRIC
BUILDINGS AMERICAS, INC.,

     Defendant-Appellant.

**APPROVED FOR PUBLICATION**

**April 26, 2019**

**APPELLATE DIVISION**

Argued April 1, 2019 – Decided April 26, 2019

Before Judges Messano, Fasciale and Rose.

On appeal from Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-0787-18.

Mark A. Rosen argued the cause for appellant (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Mark A. Rosen, of counsel and on the briefs).

Richard W. Hunt argued the cause for respondent (Parker McCay PA, attorneys; Richard W. Hunt and John Neckonchuk, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

Defendant Schneider Electric Buildings Americas, Inc. (Schneider) appeals from a July 3, 2018 Law Division order enjoining and dismissing arbitration proceedings filed against plaintiff Medford Township School District (District).[1]  We affirm.

I.

The dispute arises from the implementation of an energy savings improvement program (ESIP), N.J.S.A. 18A:18A-4.6, under which the District contracted with Schneider to design and implement upgrades to several of the District's schools and its transportation and operations center.  Initially, the parties executed the Performance Assurance Support Services Agreement (PASS Agreement), requiring the District to monitor the ESIP's actual energy savings and guaranteeing the District a certain level of monetary savings.  The PASS Agreement did not contain an arbitration provision.  Instead, its governing law clause provided, in pertinent part (emphasis added):

> This PASS Agreement will be governed, interpreted and construed by, under and in accordance with the laws, statutes and decisions of the state in which the [s]ervices are to be performed, without regard to its choice of law provisions.  Venue shall be in the federal, state or municipal courts serving the county in which the [s]ervices are performed.

---

[1]  See R. 2:2-3(a)(3) (deeming an order compelling or denying arbitration "a final judgment of the court for appeal purposes").

Thereafter, the District issued a request for proposals (RFP), seeking a qualified energy services company (ESC) to perform the services of a general contractor for its ESIP. Among other things, the RFP outlined the terms of the ESIP Agreement, including development and implementation of an energy savings plan. Paragraph 30 of the RFP contained a governing law clause, which stated verbatim (emphasis added):

> The ESIP Agreement shall be governed by the laws of the State of New Jersey. <u>The successful [ESC] shall agree that any action or proceeding that arises in any manner out of performance of the RFP or ESIP Agreement, shall be litigated in the Superior Court of New Jersey, Burlington County, State of New Jersey</u>, and the [ESC] shall consent and submit to the jurisdiction of the Superior Court.

After Schneider was awarded the project, the parties executed the Energy Services Construction Contract (ESCC).[2] Under the terms of the ESCC, the parties agreed that Schneider would be paid $2,494,575 for performing energy conservation measures, including lighting upgrades and building automation systems throughout the District.

Article 5 of the ESCC contained a dispute resolution provision, which

---

[2] The parties do not dispute that although the PASS Agreement predated the ESCC, which was executed in June 2015, and the RFP, which was issued in June 2014, the PASS Agreement applied to the project and Schneider's obligations. Inexplicably, however, the PASS Agreement was signed by the District's business administrator in January 2010 and Schneider's regional director in February 2012.

stated (emphasis added):

> 5.1   To the extent allowed by applicable law, <u>any controversy or claim arising out of or relating to this [c]ontract, or [c]ontract [d]ocuments, or any breach thereof, may be settled by binding arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association [(AAA)]</u>, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
>
> 5.2   The arbitration proceeding location shall be in the county in which the [p]roject is located.

Schneider alleged it completed its scope of work under the ESCC in January 2017 but the District withheld $462,269, claiming the work was unsatisfactory. On March 14, 2018, Schneider filed a demand for arbitration with the AAA pursuant to the arbitration provision set forth in Article 5.1 of the ESCC.

One month later, the District filed a verified complaint and an order to show cause (OTSC) in the Law Division, seeking to enjoin and dismiss Schneider's arbitration action. The complaint also alleged breaches of the ESCC and PASS Agreement and other causes of action related to Schneider's performance of work on the project. The District claimed all of the contract disputes should be litigated in the Law Division.

Schneider filed its answer to the complaint and opposition to the OTSC, countering the ESCC's arbitration provision was valid and enforceable.

A-5798-17T4

Schneider further argued the District's "allegations of defective work under the [ESCC] are inextricably intertwined with Schneider's claim for payment and should be resolved in the [a]rbitration proceeding . . . ."

On the return date of the OTSC, the trial judge rendered a tentative written decision granting the District's requested relief, but afforded the parties an opportunity to be heard. Thereafter, the judge issued a well-reasoned amplified statement of reasons,[3] thoroughly addressing the parties' arguments and applying the relevant law.

The trial judge acknowledged the validity of the arbitration provision, finding "no indication that [it] was included without negotiation or that it was an inconspicuous part of the [ESCC]." However, the judge further found by using the term, "may," the provision was permissive and not mandatory. Comparing the plain terms of the arbitration provision to other terms in the ESCC, the judge observed "the parties specifically used the word 'shall' when the terms were intended as mandatory." For example, "mandatory 'shall' language r[an] throughout the entirety of Article 2 [pertaining to payments], except for where '[p]ayments <u>may</u> [have been] withheld.'"

The trial judge found additional support for his conclusion in the governing law provision of the RFP, which "distinctly g[ave] the Burlington

---

[3] <u>See</u> <u>R.</u> 2:5-1(b).

Vicinage of the Superior Court . . . jurisdiction over disputes arising from the implementation of the District's ESIP."  As such, the judge reasoned the RFP, which preceded the ESCC, "serve[d] as extrinsic evidence for the ESCC – an agreement made to satisfy ESIP requirements – and help[ed] to uncover the actual meaning of the arbitration clause in the ESCC."

In sum, the trial judge concluded:

> the permissive, "may" in the ESCC arbitration clause ma[d]e[] arbitration optional.  In order for the ESCC arbitration clause to require arbitration, the clause needed to include mandatory language that waived the right to adjudicate in the courts or there needed to be mutual consent by the parties.  As neither of [those] scenarios exist[ed] here, . . . the District's injunction request to restrain arbitration [is granted].

This appeal followed.

Schneider maintains the plain terms of the ESCC permit either party to select binding arbitration as a means for dispute resolution, which then compels the other party to arbitrate.  In essence, Schneider claims the judge's interpretation of the arbitration provision renders the clause "superfluous" because a dispute resolution provision is unnecessary when both parties agree to arbitrate.  Schneider further argues the judge erred in considering parol evidence because the ESCC contains a merger clause.  We disagree.

A-5798-17T4

## II.

Well-established legal principles guide our review. Because the validity of an arbitration agreement is a question of law, we review the order enjoining arbitration de novo. Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)); see also Kernahan v. Home Warranty Admin. of Fla., Inc., 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law," accordingly we need not defer to the trial court's "interpretative analysis" unless it is "persuasive.").

Our jurisprudence and public policy favor alternative dispute resolution and are consistent with our view that "[l]itigation ought to be a last resort, not a first one." Billig v. Buckingham Towers Condo. Ass'n, 287 N.J. Super. 551, 564 (App. Div. 1996); see also Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013). Consequently, an "agreement to arbitrate should be read liberally in favor of arbitration." Angrisani v. Fin. Tech. Ventures, LP, 402 N.J. Super. 138, 148 (App. Div. 2008) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)).

Nonetheless, the policy favoring arbitration "is not without limits." Garfinkel v. Morristown Obstetrics & Gynecology Assocs., 168 N.J. 124, 132 (2001). Recently, our Supreme Court reiterated that "[a]n arbitration

agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'" Kernahan, 236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). The Court elaborated:

> In this state, when called on to enforce an arbitration agreement, a court's initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is "the product of mutual assent, as determined under customary principles of contract law."
>
> [Id. at 319 (quoting Atalese v. U.S. Legal Servs. Grp., LP, 219 N.J. 430, 442 (2014)).]

In Atalese, the Court found, in the context of a consumer contract for debt-adjustment services, that "because arbitration involves a waiver of the right to pursue a case in a judicial forum, 'courts take particular care in assuring the knowing assent of both parties to arbitrate, and a clear mutual understanding of the ramifications of that assent.'" 219 N.J. at 442-43 (quoting NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011)). Consequentially, when a contract contains a waiver of a right to pursue a statutory remedy in court, that waiver "must be clearly and unmistakably established." Garfinkel, 168 N.J. at 132. Accordingly, a "court may not rewrite a contract to broaden the scope of arbitration." Ibid. (quoting

Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc., 240 N.J. Super. 370, 374 (App. Div. 1990)).

As with other contractual provisions, courts look to the plain language the parties used in the arbitration provision. Id. at 135; see also Kernahan, 236 N.J. at 321 ("A basic tenet of contract interpretation is that contract terms should be given their plain and ordinary meaning."); Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 270 (App. Div. 2000) (in construing an arbitration clause, courts must honor the intentions of the parties as set forth in the language).

At issue here is whether the terms of the arbitration clause permit or mandate arbitration. In certain contexts, we have recognized that where a provision permits the parties to select arbitration to resolve a dispute under the contract, but does not mandate arbitration, the provision is optional. Riverside Chiropractic Grp. v. Mercury Ins. Co., 404 N.J. Super. 228, 237-38 (App. Div. 2008).

In Riverside, we considered an arbitration clause in an automobile insurance contract, which permitted an injured party, the insured, and the assignee of the insured's provider to submit a claim to dispute resolution. Id. at 233. However, "the applicable insurance contract d[id] not entitle the insurer to elect arbitration over the wishes of the insured." Id. at 238.

Pursuant to the plain language of the arbitration clause, we determined the use of the word "may" did not mandate arbitration. Id. at 237. Instead, it afforded the provider-assignee of the insured "the option of filing for arbitration, but d[id] not require it to do so." Ibid. We thus determined "had plaintiff opted to file its claim . . . initially in the trial court, nothing in the contract language would have forbidden the suit from going forward." Ibid.

Significantly, in Riverside, the policy at issue did not provide "[e]ither party may make a written demand for arbitration." Id. at 238 (alteration in original). Had the policy contained that language, we recognized it "could [have] be[en] construed as making arbitration mandatory, because if the insured elect[ed] to sue, the insurer c[ould] simply make a written demand for arbitration, which must then be honored." Ibid. (emphasis added). Accordingly, when an arbitration provision specifically permits either party to select arbitration, once invoked, the other party may be bound to arbitrate the dispute. See e.g., Local 771, I.A.T.S.E. v. RKO Gen., Inc., 546 F.2d 1107, 1115-16 (2d Cir. 1977) (recognizing a contract that provides "[t]he parties may submit to arbitration" triggers mandatory arbitration and that "[n]either the word 'may' nor any other language used in the [a]greement implies that the parties had the option of invoking some remedy other than arbitration").

Against that legal backdrop, we begin our analysis by reiterating the arbitration clause at issue did not provide that either party may resolve disputes under the ESCC by binding arbitration. Rather, the clause generally provides "any controversy or claim arising out of or relating to [the ESCC], or [c]ontract [d]ocuments, or any breach thereof, may be settled by binding arbitration." Nonetheless, Schneider urges us to interpret the provision as mandatory where, as here, it invoked arbitration and the parties to the contract are "two sophisticated entities."

Notably, the District is not "an average member of the public[,]" nor is the ESCC a consumer contract. Cf. Atalese, 219 N.J. at 442-43. Indeed, the District is a public entity and was sophisticated enough to draft a fifty-five page RFP to solicit bids for a multi-million dollar project. Nor is the ESCC a contract of adhesion. As the judge aptly recognized, "[t]here is no indication that the arbitration provision was included without negotiation or that it was an inconspicuous part of the [ESSC]." We also agree with the trial judge that the arbitration provision is prominently "identifiable" on the fifth page of the nineteen-page ESCC.

Pursuant to its plain terms, under certain circumstances the arbitration provision, standing alone, might support Schneider's argument that it is mandatory because the term, "may" permitted either of the two "sophisticated"

11

parties to invoke arbitration. Schneider contends interpreting the provision as permissive renders it superfluous because, even absent an arbitration clause, the parties to a contract can always submit a dispute to arbitration if the other consents. Without any related conflicting agreements executed between the parties mandating litigation, we might agree with Schneider's position. Such is not the case here, however.

Rather, the terms of the arbitration clause, when read in pari materia with the mandatory provisions of the two governing law provisions in the RFP and PASS Agreement, both of which preceded the ESCC, mandate litigation and do not evince a clear intent to waive the right to sue in court. Contrary to Schneider's argument, the arbitration clause is not superfluous because the governing law provision of the RFP specifically required the successful bidder of the project to "agree" to "litigate[]" any disputes "aris[ing] in any manner out of performance of the RFP or ESIP Agreement" in the Burlington Vicinage. Likewise, interpretation and construction of the PASS Agreement was required to be resolved in "federal, state or municipal courts serving the county in which the [s]ervices [we]re . . . performed." Thus, the arbitration provision in the ensuing ESCC permitted the parties to choose a forum not previously agreed to, or permitted, under the mandatory governing law provisions of the PASS Agreement and RFP. Because the ESCC's dispute

resolution clause permitted arbitration when the parties previously did not have that option, the clause was not superfluous.

Put another way, had the District consented to arbitration after that forum was invoked by Schneider, the parties would not have violated the governing law provisions of the PASS Agreement and RFP. Reading the arbitration provision as a whole, however, the use of the permissive term, "may" without a clear indication that the parties intended to waive litigation cannot be harmonized with the PASS Agreement and RFP, both of which clearly require resolution of disputes under the ESIP in a court of law.

We are likewise unpersuaded by Schneider's argument that the ESCC's merger clause prohibits the introduction of extrinsic evidence under the parol evidence rule. As the trial court recognized, "[t]he ESCC and the PASS Agreement are in conflict regarding which contract's terms supersede if there are varying terms and conditions related to the same subject matter."

Specifically, Article 13.5, the final article of the ESCC provides, in pertinent part: "[The ESCC] sets forth the entire understanding between the parties and supersedes all prior oral or written understandings related to the subject matter herein." Conversely, the second sentence on the first page of the PASS Agreement provides, "To the extent that the terms and conditions in this PASS Agreement conflict with the terms and conditions in the Energy

Services Contract,[4] the terms and conditions of this PASS Agreement shall control."

Although the PASS Agreement and the ESCC apparently conflict regarding merger, the trial judge properly considered extrinsic evidence to support his decision that the arbitration clause was permissive. Our Supreme Court has long recognized, "[e]vidence of the circumstances is always admissible in aid of the interpretation of an integrated agreement. This is so even when the contract on its face is free from ambiguity." Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006) (alteration in original) (quoting Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953)); see also Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014). Thus, notwithstanding the ESCC's merger clause, interpretation of the arbitration provision is not precluded by consideration of extrinsic evidence.

Based on our de novo review of the record, when viewed in conjunction with the parties' related agreements, we agree with the trial judge that the ESCC's arbitration provision was permissive and not mandatory. As the judge correctly observed, the parties specifically used the term, "shall" when they intended certain provisions of the ESCC to be mandatory. Had the District and

_____

[4]  It is not entirely clear from the record whether the "Energy Services Contract" is another term for the ESCC, which was not executed until June 2015.

Schneider intended to resolve their disputes by mandatory arbitration, the ESCC should have explicitly so stated. Instead, use of the permissive term, "may" underscored their intention that the arbitration provision was permissive. Further, Schneider drafted the agreement and, as such, to the extent there exists any ambiguity in the arbitration provision, that ambiguity should be construed against Schneider. See e.g., Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017).

In sum, a permissive interpretation of the arbitration provision in the ESCC is consistent with the parties' prior intentions that disputes between them would be litigated in court, as expressed in both the PASS Agreement and RFP. Thus, we conclude under the facts presented that, absent its consent, the District was not bound to arbitrate its alleged breaches of the ESCC, nor Schneider's alleged breaches of the ESCC and PASS Agreement and other causes of action related to Schneider's performance of work on the project.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5798-17T4