NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1703-22

ESTHER OGUNYEMI,

      Plaintiff-Appellant,

v.

GARDEN STATE MEDICAL
CENTER, CENTER FOR SPINE
AND JOINT PAIN RELIEF, and
DHARAM MANN,

      Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 25, 2024**
>
> **APPELLATE DIVISION**

Argued October 11, 2023 – Decided March 25, 2024

Before Judges Sumners, Rose and Smith (Judge Rose concurring).

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1263-22.

Nancy E. Smith argued the cause for appellant (Smith Mullin, PC, attorneys; Nancy E. Smith, of counsel and on the briefs).

Joseph M. Vento (Seyfarth Shaw, LLP) argued the cause for respondents.

The opinion of the court was delivered by

SMITH, J.A.D.

Plaintiff, Dr. Esther Ogunyemi, appeals from a trial court order staying all claims in her complaint pending arbitration, including her claim that defendants violated the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, by terminating her employment in retaliation for reporting sexual harassment.

On appeal, plaintiff contends that the arbitration clause in her employment contract is ambiguous, and that certain other terms in her contract are unconscionable. As a result, she argues that the arbitration clause is unenforceable. She also argues that to the extent the trial court found she waived her right to bring her claims in a court of law, an amendment to the LAD, N.J.S.A. 10:5-12.7, (Section 12.7) prohibits that waiver.

Because we find the arbitration clause in plaintiff's employment contract ambiguous, we conclude its terms are unenforceable. Having reached this conclusion, we do not reach the unconscionability or statutory issues raised by plaintiff. We reverse.

I.

Plaintiff applied for a job as a pain specialist with defendants in February 2021. Defendants offered plaintiff a position and gave her a draft employment contract to review. After reviewing the draft contract and suggesting some modifications not related to the issues before us, plaintiff

signed a ten-page employment agreement on March 29, 2021. We highlight the relevant terms.

Section 27, "VENUE, ARBITRATION AND ACCEPTANCE OF SERVICE OF PROCESS," states in pertinent part:

> Each party to this Agreement hereby agrees and consents that any legal action or proceedings with respect to this Agreement shall only be brought in the courts of the State of New Jersey in Ocean County. . . . [E]ach such party hereby (i) accepts the jurisdiction of the aforesaid courts . . . Except as set forth in Section 11 hereof ["Termination"], any claim, controversy or dispute between you and CSJPR[1] (including without limitation CSJPR's affiliates, shareholders, employees, representatives, or agents) arising out of or relating to your employment, the cessation of your employment, or any matter relating to the foregoing (any "Controversy"), shall be submitted to and settled by arbitration before a single arbitrator . . . The foregoing requirement to arbitrate Controversies applies to all claims or demands by you, including without limitation any rights or claims you may have under any employment law whatsoever, including, but not limited to . . . the New Jersey Law Against Discrimination ("LAD") . . . or any other federal, state or local laws or regulations pertaining to your employment, the termination of your employment or this Agreement. YOU UNDERSTAND AND AGREE THAT THIS ARBITRATION PROVISION WAIVES YOUR RIGHT TO A JURY TRIAL FOR ANY AND ALL CLAIMS, INCLUDING STATUTORY EMPLOYMENT CLAIMS.

---

[1] Co-defendant Center for Spine and Joint Pain Relief.

A-1703-22

Section 11, referenced by Section 27, is titled, "TERMINATION," and states in pertinent part:

> This Agreement may be terminated upon the happening of any of the following events:
>
> . . . .
>
> (l) [Y]ou are unable to perform the essential functions of your position due to physical or mental illness, disability, or incapacity, with or without a reasonable accommodation it being recognized that your inability to perform your essential job functions for any prolonged period of time, usually twelve (12) weeks or more, will result in an undue hardship to the operations of CSJPR; or CSJPR is dissolved, ceases operations or files for bankruptcy.

Plaintiff's first day of work was September 1, 2021. Shortly after she began, on October 8, plaintiff alleged she was sexually assaulted at the home of co-defendant, Dr. Dharam Mann, while attending a new doctors welcome party. Plaintiff confronted Dr. Mann about the assault on October 19, and told him the incident was causing her distress. CSJPR terminated plaintiff one month after the incident, on November 9.[2]

---

[2] The reason for plaintiff's termination is not found in the record, but plaintiff's merits brief states that defendants informed her that her termination was due to "ceased operations." The record shows discovery has not been completed, but the particular facts underlying the LAD claim do not affect the outcome on appeal.

On May 9, 2022, plaintiff filed a complaint against defendants alleging violations of the LAD; sexual assault and battery; and intentional infliction of emotional distress. Defendants moved to compel arbitration pursuant to the contract.

The trial court heard argument in August 2022, and issued an order granting defendants' motion on January 20, 2023. The court made findings: there was mutual assent between the parties; having found assent, the contract was valid and enforceable; the language in the contract's arbitration clause was clear and unambiguous; and federal arbitration law[3] barred use of Section 12.7 to defeat mandatory arbitration. The trial court then stayed the matter for six months pending arbitration. Plaintiff appealed.

## II.

We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (a trial court's interpretive analysis should not be deferred to unless we find its reasoning persuasive). We owe no special deference to the trial court's interpretation of an arbitration provision, which we view "with fresh eyes." Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016).

---

[3] Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.

A-1703-22

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, and the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -32, represent a legislative choice "to keep arbitration agreements on 'equal footing' with other contracts." Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017) (quoting Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 441 (2014)). Under both statutes, "arbitration is fundamentally a matter of contract," and should be regulated according to general contract principles. Antonucci v. Curvature Newco, Inc., 470 N.J. Super. 553, 561 (2022) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011)).

"Although 'arbitration [is] a favored method for resolving disputes . . . [t]hat favored status . . . is not without limits.'" Gayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 23 (App. Div. 2021) (alterations in original) (quoting Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131-32 (2001)). An arbitration agreement may be modified, superseded, or, in certain circumstances, waived. Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013) (citing Wein v. Morris, 194 N.J. 364, 376 (2008)).

"An agreement to arbitrate . . . 'must be the product of mutual assent,'" and "requires 'a meeting of the minds.'" Antonucci, 470 N.J. Super. at 561

(quoting Atalese, 219 N.J. at 442). "[T]o be enforceable, the terms of an arbitration agreement must be clear," and the contract needs to explain that the agreement waives a person's right to have their claim tried in a judicial forum. Ibid.

In the employment setting, we require "an express waiver of the right to seek relief in a court of law," due to the generally unequal relationship between the contracting parties. Cnty. of Passaic v. Horizon Healthcare Servs., Inc., 474 N.J. Super. 498, 503 (App. Div. 2023); see also In re Remicade Antitrust Litigation, 938 F.3d 515, 525 (3d Cir. 2019). "Employees should at least know that they have 'agree[d] to arbitrate all statutory claims arising out of the employment relationship or its termination.'" Atalese, 219 N.J. at 447 (alteration in original) (quoting Garfinkel, 168 N.J. at 135).

## III.

### A.

Plaintiff argues that her employment contract was unenforceable because certain terms were ambiguous and other terms were unconscionable. We first look to well-settled law to consider her ambiguity argument.

The Atalese Court held a consumer contract arbitration clause unenforceable, concluding the term failed to include language "that plaintiff waived her right to seek relief in court." 219 N.J. at 435. The Court

considered previous cases where "[o]ur courts have upheld arbitration clauses phrased in various ways." Id. at 444-45. Each case cited by the Atalese Court included an express contractual term stating arbitration was the sole remedy. See, e.g., Martindale v. Sandvik, Inc., 173 N.J. 76, 81-82 (2002) (enforcing an arbitration clause stating, "all disputes relating to . . . employment . . . shall be decided by an arbitrator."). The Court concluded that an effective arbitration clause, "at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute," and must demonstrate the party's understanding of all relevant terms. Id. at 447.

Morgan gives us additional insight into ambiguity within arbitration clauses. 225 N.J. at 310. In holding an arbitration clause like the one in Atalese unenforceable, the Court concluded the clause was not "written in plain language . . . clear and understandable to the average consumer." Ibid. (quoting Atalese, 219 N.J. at 446). It also cited to the length of the clause, 750 words running on in thirty-five unbroken lines, and stated that "[t]he best that can be said about the arbitration provision is that it is as difficult to read as other parts of the enrollment agreement." Ibid.

B.

8

Given these core tenets, we examine Section 27 of the employment agreement. We are mindful that "to the extent there exists any ambiguity in the arbitration provision, that ambiguity should be construed against [the drafter]." Medford Twp. Sch. Dist. v. Schneider Elec. Bldgs. Ams., Inc., 459 N.J. Super. 1, 12 (App. Div. 2019) (citing Roach, 228 N.J. at 174).

An initial scan of Section 27 reveals a series of difficult to decipher and contradictory sentences contained in a single arbitration clause. The clause contains 887 words in thirty-six unbroken lines. A closer reading shows that the run-on paragraph harbors within it mutually inconsistent means for dispute resolution.

The first six-and-one-half lines establish jurisdiction for employment related disputes in our state courts. It reads, "[e]ach party" consents to Superior Court jurisdiction for "any legal action or proceedings with respect to this Agreement . . . ." and commits the parties to accept the jurisdiction of the courts. (Emphasis added). The opening lines of Section 27 are clear, unambiguous, and all-encompassing as they describe employment contract-related claims between the parties. The use of broad phrases such as "any legal action" and "proceedings with respect to this Agreement," leave little room for a narrow definition of this section's scope. Finally, this part of

Section 27 states that such contract-related claims shall "only be brought in the State of New Jersey in Ocean County."

The next six lines of Section 27 inexplicably remove the exclusive Superior Court jurisdiction just conferred. This run-on sentence takes a dramatically different approach to dispute resolution, compelling arbitration for "any claim, controversy or dispute between you and CSJPR . . . arising out of or relating to your employment, the cessation of your employment, or any matter relating to the foregoing . . . ." Notably, this sweeping and mandatory arbitration language creates an exception—Section 11—identifying eleven possible causes for plaintiff's termination which are exempt from arbitration. The causes include but are not limited to: plaintiff's loss of her medical licenses, board certifications, or hospital privileges; plaintiff's failure to comply with defendants' internal policies; and neglect of duty. Our thorough review of Section 11's language shows that it provides no guidance concerning how to resolve these exempt disputes. We bear this in mind as we consider the rest of the arbitration clause.

The twenty-sixth line of Section 27 reads in part, "the foregoing requirement to arbitrate Controversies applies to all claims or demands by you, including without limitation any rights or claims you may have under any employment law whatsoever, including, but not limited to . . . the [LAD]."

10

This sentence represents the drafter's third separate attempt to establish a forum for the parties' disputes. Unlike the first two attempts, this arbitration clause identifies no limitations or exceptions. The language is broad in scope, like the opening sentence. Rather than limitations on arbitration, this clause contains inclusive language, and specifically identifies various federal and state employment discrimination claims for arbitration.

Finally, Section 27 ends with plaintiff's waiver of her right to a trial on any dispute concerning her employment. Lines thirty-four through thirty-six read: YOU UNDERSTAND AND AGREE THAT THIS ARBITRATION PROVISION WAIVES YOUR RIGHT TO A JURY TRIAL FOR ANY AND ALL CLAIMS, INCLUDING STATUTORY EMPLOYMENT CLAIMS.

## C.

Viewing Section 27 through the lens of <u>Atalese</u> and <u>Morgan</u>, we reach one dispositive conclusion. Section 27 is not written in plain, clear, and understandable language. The confusing and poorly drafted paragraph proposes no fewer than three distinct avenues for dispute resolution between the parties. These separate avenues defy any way to credibly reconcile them.

The first lines of Section 27 call for any legal action or proceedings with respect to the agreement to be litigated in the Superior Court, Ocean County vicinage. There are no conditions attached to that term. Next, Section 27 calls

11

for limited arbitration of any claims, controversies, or disputes between the parties to the employment agreement. The limitation specifically carves out certain causes for termination which <u>cannot</u> be arbitrated, although the contract is silent on how disputes concerning these enumerated exceptions would be resolved. Finally, Section 27 attempts to impose an unconditional arbitration clause, covering all claims or demands by plaintiff. None of these three clauses references the other. Indeed, they appear to be standalone provisions which, by happenstance, inhabit the same section of the same contract at the same time. The presence of each separate dispute resolution clause in Section 27 renders the other two clauses meaningless, making the employment agreement ambiguous when read as a whole.

We do not agree with the trial court, which reviewed the arbitration clause and reached the legal conclusion that its terms were plain and unambiguous. We find the court's reasoning unpersuasive, <u>Skuse</u>, 244 N.J. at 46. The express waiver language at the end of Section 27 does not resolve the ambiguity preceding it, which must be construed against defendants. <u>See Roach</u>, 228 N.J. at 174. Based on our de novo review, <u>Atalese</u>, 219 N.J. at 245, we conclude that the arbitration clause in plaintiff's employment agreement signed is unenforceable as a matter of law.

12

Having found the arbitration clause unenforceable, we need not reach plaintiff's unconscionability arguments, nor the statutory questions raised on appeal. We reverse the trial court's order compelling arbitration and remand for proceedings consistent with this opinion.

Reversed. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

_____

ROSE, J.A.D., concurring.

I agree with the result reached by my colleagues but write separately because I would reverse the January 20, 2023 order for a different reason. Discerning no ambiguity in the arbitration provision, I would reach plaintiff's statutory argument and conclude the provision improperly waives plaintiff's right to a jury trial on her LAD claims under Section 12.7. In doing so, I distinguish the terms of the present contract from those of the contract at issue in Antonucci, which expressly provided the FAA governed. 470 N.J. Super. at 566. We held the FAA therefore "pre-empts Section 12.7 when applied to prevent arbitration called for in an agreement governed by the FAA," ibid., but declined to address "whether Section 12.7 is enforceable when applied to an arbitration agreement governed by the [NJAA]," id. at 567.

In the present matter, the employment contract is silent as to whether the FAA or NJAA applies. In my view, however, there is no evidence in the record that the parties' employment contract affects interstate commerce, which would otherwise bring the agreement within the ambit of the FAA and compel arbitration. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003); see also Gras v. Assocs. First Cap. Corp., 346 N.J. Super. 42, 47 (App. Div. 2001). Accordingly, I agree with the majority's decision to reverse the order dismissing plaintiff's complaint and afford plaintiff her day in court.

A-1703-22

Although I need not reach plaintiff's contention that the arbitration provision is unenforceable under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401-402, I do so for completeness. I am persuaded by defendants' argument that plaintiff's claims under the EFAA are time barred.

I.

In my view, the majority goes to great lengths to find ambiguity in the arbitration provision where none exists. The provision clearly and unmistakably evinces the parties' intent to arbitrate the LAD claims asserted in plaintiff's complaint. Further, the waiver-of-rights provision is printed in all capital letters and clearly informs plaintiff she waives her right to a jury trial for those claims. See Atalese, 219 N.J. at 447 (holding "the clause, at least in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute").

Unlike the majority, I discern no ambiguity or confusion between the first portion of Section 27 (court provision) and the second, albeit lengthier, portion of the same section (arbitration provision). The court provision clearly refers all claims pertaining to the employment contract to "the courts of the State of New Jersey in Ocean County," while the arbitration provision

include[s] without limitation any claims [plaintiff] may have under any employment law, whatsoever, including but not limited to, the Age Discrimination in Employment Act of 1967, Section 1981 of the Civil Rights Act, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act of 1991, the Equal Pay Act, the Family and Medical Leave Act and/or New Jersey family leave and medical leave laws, <u>the New Jersey Law Against Discrimination ("LAD")</u>, the New Jersey Conscientious Employee Protection Act ("CEPA"), or any other federal, state or local laws or regulations pertaining to [plaintiff's] employment, the termination of [plaintiff's] employment or this Agreement.

[(Emphasis added).]

Without question, plaintiff's LAD claims are expressly included within the arbitration provision and, as such, the parties' dispute falls within its scope. See <u>Martindale</u>, 173 N.J. at 92.

Nor am I persuaded the exclusion of the contract's Section 11 "events" within the arbitration provision somehow muddies its clear intent. Set forth in paragraphs (a) through (q), those events do not give rise to an employment law claim and, as such, they are not arbitrable. Unlike the "multiple arbitration provisions" we deemed "confusing" in <u>NAACP</u>, the arbitration provision at issue neither was "spread across three different documents" nor "conflicting." See 421 N.J. Super. at 430-32. Stated another way, the court and arbitration provisions embodied in Section 27 do not conflict with each other. Instead, they govern different types of claims, i.e., claims pertaining to the contract and

16

nonemployment-related events are litigated in court, while those pertaining to alleged violations of employment law are resolved before an arbitrator.

Further, I disagree with the majority's comparison of the arbitration provision in the present matter with the provisions our Supreme Court found faulty in Atalese and Morgan. In those cases, the Court condemned the arbitration provisions at issue for their "fail[ure] to explain in some minimal way that arbitration [wa]s a substitute for a consumer's right to pursue relief in a court of law." Morgan, 225 N.J. at 294 (quoting Atalese, 219 N.J. at 436). That is not the case here.

Moreover, the circumstances surrounding plaintiff's acceptance of the contract's terms shed light on her understanding of the arbitration provision. On February 24, 2021, Dr. Mann presented the employment contract to plaintiff. The following month, on March 22, 2021 – after consultation with her attorney – plaintiff requested certain changes to the contract, some of which were incorporated therein. One week later, on March 29, 2021, plaintiff executed the agreement. She commenced her employment at CSJPR on September 1, 2021, five months after she signed the contract. See Martindale, 173 N.J. at 97 (enforcing a waiver-of-rights provision in an employment contract where the plaintiff, "an educated businesswoman . . . was provided with ample time and opportunity to review the application").

For the foregoing reasons, I disagree with the majority's conclusion that the arbitration provision at issue is ambiguous. Accordingly, I deem it necessary to consider plaintiff's statutory claims.

## II.

Following oral argument before us, the court sought supplemental briefing regarding two issues:

<u>Issue 1</u>

Is an employment agreement that does not expressly cite to the . . . FAA, but contains an arbitration clause, subject to the FAA?

Discuss whether the employment agreement signed by the parties was a "contract involving interstate commerce . . . subject to the FAA." (Citation omitted).

<u>Issue 2</u>

If the employment agreement signed by the parties is subject to the FAA, is [Section] 12.7 of the . . . LAD preempted as of the [March 3, 2022] enactment date of the . . . EFAA?" (Citation omitted).

Can [S]ection 12.7 of the []LAD still be considered to frustrate the purpose of the FAA after March 3, 2022? If not, what effect does its resuscitated status have on claims brought under the LAD that accrued prior to March 3, 2022, but were timely filed after March 3, 2022?

I begin my review by summarizing the relevant statutory framework vis-à-vis the procedural posture of the present matter to lend context to my

18                                                                      A-1703-22

analysis. Effective March 18, 2019 – two years before plaintiff executed the contract in this case – the Legislature amended the LAD to add several sections, including Section 12.7. In pertinent part, Section 12.7 states:

> a. A provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable.
>
> b. No right or remedy under the [LAD], . . . or any other statute or case law shall be prospectively waived.

Effective March 3, 2022 – one year after plaintiff executed the contract in this case – the EFAA amended the FAA by invalidating "predispute arbitration agreements"[4] that precluded a party from filing in court a lawsuit involving sexual assault or sexual harassment:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.
>
> [9 U.S.C. § 402(a).]

---

[4] Pursuant to 9 U.S.C. § 401(1): "The term 'predispute arbitration agreement' means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement."

19

In turn, the FAA was amended accordingly and now renders invalid contracts containing agreements to arbitrate that violate the EFAA. 9 U.S.C. § 2. Pertinent to this appeal, an historical note provides in pertinent part: "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act." 9 U.S.C. § 401 hist. n.

Addressing the application of the EFAA and Section 12.7 in reverse order, I agree with defendants that the EFAA applies to claims that accrued after its effective date. Plaintiff's LAD claims accrued on November 9, 2021, when she was allegedly terminated from her employment with defendants after having reported Dr. Mann's conduct on October 18, 2021. Indisputably, plaintiff's claims preceded the effective date of the EFAA, and as such, her complaint would be preempted by the FAA – if, indeed, the FAA governed the employment contract at issue.

In the present matter, the arbitration provision does not declare whether the FAA or the NJAA applies. As our Supreme Court held in Arafa v. Health Express Corp., "[t]he NJAA governs 'all agreements to arbitrate made on or after January 1, 2003,' and exempts from its provisions only 'an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement.'" 243

N.J. 147, 167 (quoting N.J.S.A. 2A:23B-3(a)). By contrast, the FAA controls transactions affecting interstate commerce and provides:

> A written provision in . . . <u>a contract evidencing a transaction involving commerce</u> to settle by arbitration a controversy thereafter <u>arising out of such contract or transaction</u>, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided [pursuant to 9 U.S.C. §§ 401-402].
>
> [9 U.S.C. § 2 (emphasis added).]

The United States Supreme Court has held the term, "involving commerce," must be interpreted broadly to mean any conduct that affects interstate commerce. <u>Allied-Bruce Terminix Cos. v. Dobson</u>, 513 U.S. 265, 273-77 (1995). According to the Court, "the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'" <u>Id.</u> at 273-74. The Court also analyzed the phrase, "evidencing a transaction," <u>id.</u> at 279, and held that it means the "'transaction' in fact 'involve[s]' interstate commerce, even if the parties did not contemplate an interstate commerce connection," <u>id.</u> at 281.

Plaintiff argues "the record is completely devoid of even one fact indicating that [d]efendants' business is engaged in any kind of interstate commerce." Citing plaintiff's complaint, defendants counter plaintiff was a

New York resident and "work[ed] for defendants in Monmouth County." Defendants further argue the employment contract required plaintiff to: participate in certain insurance programs, Medicaid, and Medicare; "maintain an accurate profile on the State Department of Health's website"; and possess a "current controlled substance registration[] issued by . . . the United States Drug Enforcement Agency."

Defendants' reliance on this court's decisions in Estate of Ruszala ex rel. Mizerak v. Brookdale Living Communities, Inc., 415 N.J. Super. 272 (App. Div. 2010), and Alfano v. BDO Seidman, LLP, 393 N.J. Super. 560 (App. Div. 2007), is misplaced.

In Ruszala, we concluded the arbitration provisions contained in nursing home residency agreements were governed by the FAA even though the provisions did not so state. Id. at 292. The record included the affidavit of the nursing home's vice president, which stated "supplies, such as food, medicine, and medical equipment" were purchased "'primarily from out-of-state vendors' through 'mail, electronic mail, telephone, and facsimile transactions.'" Id. at 291. We concluded the "nursing home facilities c[ould] not function without the materials procured from these out-of-state suppliers," and "[t]he delivery of these goods from their points of origin to the doors of these facilities thus 'affect[ed]' interstate commerce and involve[d] the federally regulated industry

of interstate transportation."  Ibid.  We also noted the facilities "[we]re incorporated in a foreign jurisdiction and they admit[ted] residents who originally resided outside of this State."  Ibid.

In Alfano, we held:  "A nexus to interstate commerce is found when citizens of different states engage in the performance of contractual obligations in one of those states because such a contract necessitates interstate travel of both personnel and payments."  393 N.J. Super. at 574 (citing Crawford v. W. Jersey Health Sys., 847 F. Supp. 1232, 1240 (D. N.J. 1994)).  In Alfano, the plaintiff was a resident of New Jersey and the defendant was "a German corporation, with an office in New York."  Ibid.  However, the record also disclosed:  "The parties met in Manhattan, and the transactions involved investments in (1) foreign Deutsche Bank stock and options, (2) a Cayman Island limited partnership, (3) a Cayman Island corporation, and (4) a Delaware company."  Ibid.  Moreover, "[t]he securities transactions at issue involved interstate and international commerce."  Ibid.

In Crawford, the District Court concluded the arbitration provision in an employment contract between a New Jersey physician and New Jersey medical practice was governed by the FAA because the practice "treat[ed] patients who live[d] and work[ed] in Pennsylvania."  847 F. Supp. at 1240.  Further, the patients' medical costs "[we]re paid through out-of-state or multi-state

23

insurance carriers"; the "[d]efendants advertise[d] regularly in out-of-state newspapers"; and the "defendants receive[d] goods and services from numerous out-of-state vendors." Ibid.

Conversely, in the present matter, there is no evidence in the record that defendants: treated patients who resided outside the state; advertised outside the state; or received goods and services from out-of-state vendors. Therefore, I am not persuaded by defendants' argument that because plaintiff resided in New York and was required to participate in federal programs and licensure requirements, the employment contract "affected" interstate commerce as defined by the United States Court in Allied-Bruce.

In my view, the distinguishing factor in the present matter is the lack of any out-of-state transactions. More particularly, because the record is devoid of any suggestion that the relationship between the parties involved the provision of medical care to patients outside New Jersey or that plaintiff's employment with defendants otherwise involved interstate commerce, I conclude the contract does not "affect" interstate commerce. Accordingly, because plaintiff's claims accrued after the effective date of Section 12.7, the arbitration provision is void and plaintiff's claims should be litigated in Superior Court pursuant to Section 27.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

24