**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1458-23

DAVID J. SINGER, individually
and derivatively on behalf of
VELLA SINGER AND
ASSOCIATES, PC,

      Plaintiff-Respondent,

v.

MAUREEN E. VELLA, individually,
and THE LAW OFFICES OF
MAUREEN E. VELLA, LLC,

      Defendants-Appellants.

_____

Argued September 12, 2024 – Decided November 6, 2024

Before Judges Gummer and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1983-23.

Kenneth S. Thyne argued the cause for appellants (Simon Law Group, LLC, attorneys; Kenneth S. Thyne, of counsel and on the briefs).

Brian M. Cige argued the cause for respondent.

PER CURIAM

In this law-firm dissolution case, defendant Maureen E. Vella appeals from an order denying her motion to dismiss the complaint pursuant to Rule 4:6-2 based on a dispute-resolution clause contained in the parties' Law Firm Shareholders Agreement (Agreement). Given the Agreement's plain language, we affirm.

I.

On October 18, 2019, Vella, plaintiff David J. Singer, and Susan Schleck Kleiner executed the Agreement individually. Vella also executed the Agreement on behalf of Vella, Singer & Kleiner, P.C., as its president and managing partner. The Agreement identified "Vella, Singer and Associates, P.C.," as the law firm and described it as "doing business as" Vella, Singer and Kleiner, P.C. The Agreement named Vella, Singer, and Kleiner as the shareholders of the firm. According to Singer, Kleiner, who is not involved in this appeal, left the firm in October of 2020. Vella asserts Singer "largely drafted" the Agreement. Singer denies he was "involved in the initial preparation" of the Agreement and claims it was "primarily drafted" by Vella "and/or" Kleiner with "all three [of them] involved in meetings to finalize it."

A-1458-23

Paragraph 23 of the Agreement was entitled "Dispute Resolution" and provided:

> In the event of a dispute among the Shareholders, the Shareholder[s] agree to conduct good faith negotiations in order to settle the dispute. If the dispute cannot be settled within 30 days, the Shareholders agree to submit the dispute to mediation before a mutually-agreed upon mediator. If mediation proves unsuccessful within 45 days of submission of the dispute, the Shareholder may submit the dispute to binding arbitration before a mutually-agreed upon Arbitrator. If the parties cannot agree to a mediator/arbitrator, the dispute may be submitted to JAMS using the procedures outlined by JAMS.

Paragraph 33 of the Agreement was entitled "Enforcement" and stated:

> The Shareholders understand that it is impossible to measure, in dollars, the damage[s] to be sustained by the Law Firm and each other in the event of a breach of the provisions of this Agreement. Accordingly, the Shareholders hereby submit to Dispute Resolution as defined in Paragraph 23 of this Agreement with the understanding that the Arbitrator shall specifically enforce the provisions of such paragraphs as it determines warrant specific performance thereof, without limiting the rights of the aggrieved part(ies) to seek, in addition thereto, compensatory and/or punitive damages, by reason of such breach(es).

According to Vella, Singer told her in July of 2022 he was leaving the firm to join another firm. According to Singer, Vella resigned from her employment with the firm as of August 1, 2022. On April 6, 2023, Singer,

A-1458-23

indicating he was acting individually and derivatively on behalf of Vella Singer and Associates, PC, filed a verified complaint against Vella and the Law Offices of Maureen E. Vella, LLC, alleging, among other things Vella had breached her obligations under the Agreement. On April 24, 2023, the court dismissed the case because it had been "[s]ettled by [c]onference with [j]udge." However, on October 19, 2023, the court reinstated the case to the "active track list" and transferred it to another vicinage.

On November 21, 2023, Vella moved to dismiss the complaint pursuant to Rule 4:6-2 based on the Dispute Resolution clause of the Agreement. In support of her motion, Vella submitted a certification in which she testified she "would never have entered into an agreement that provided for disputes between [her] and those [with] whom [she] practice[d] law to be resolved in open Court," and she "had always expected any disputes to be resolved through mediation, and failing that, arbitration." She also certified her counsel had advised Singer's counsel "the matter belonged in arbitration" and denied she had "waive[d] [her] right to initiate arbitration." Vella asked the court to dismiss the case or, alternatively, stay it "pending entry of judgment following arbitration as described in paragraph 23" of the Agreement.

4

Opposing the motion, Singer submitted a certification in which he agreed "[p]aragraph 23 identifies the obligations and Dispute Resolution process" but contended "arbitration is not required." According to Singer, the parties had retained a mediator pursuant to the Agreement, but the mediation was unsuccessful. Singer contended the use of the word "may" in paragraph 23 was "intentional, neither party is required to mediate or arbitrate beyond the initial effort which was unsuccessful . . . ."

On January 11, 2024, the court entered an order and placed a decision on the record denying Vella's motion. The court cited Atalese v. U.S. Legal Services Group, LP, 219 N.J. 430, 447 (2014), for the proposition that despite arbitration's favored status under the law, the language of an arbitration agreement "must be clear and unambiguous that a consumer is choosing to arbitrate its disputes rather than having them resolved in a court of law." The court found "both in terms of Atalese, and just the plain wording of the contract . . . that the parties' contract . . . [was] permissive and not mandatory" and denied the motion. In rendering that decision, the court did not identify any particular provision of the Agreement.

Vella appealed, arguing the court misapplied Atalese and misconstrued as permissive the language of paragraph 23 of the Agreement, thereby improperly

rendering paragraphs 23 and 33 of the Agreement "superfluous and nonsensical." Because the plain language of the Agreement permits but does not require the parties to submit their disputes to arbitration, we affirm.

## II.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a question of law." Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023); see also Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020) (reviewing de novo trial court's determination that the plaintiff's claims were subject to arbitration). Thus, we "need not give deference to the [legal] analysis by the trial court." Santana, 475 N.J. Super. at 285 (alteration in original) (quoting Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019)).

"New Jersey has a long-standing policy favoring arbitration as a means of dispute resolution." Ibid.; see also Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002) (acknowledging "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism for resolving disputes"). However, "[t]hat favored status . . . is not without limits." Santana, 475 N.J. Super. at 285 (alterations in original) (quoting Gayles by Bayles v. Sky Zone Trampoline Park, 468 N.J. Super. 17, 23 (App. Div. 2021)). "An arbitration agreement must

6

be the result of the parties' mutual assent, according to customary principles of state contract law." Ibid. (quoting Skuse, 244 N.J. at 48); see also Perez v. Sky Zone LLC, 472 N.J. Super. 240, 247 (App. Div. 2022) (finding that under the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36, "arbitration is fundamentally a matter of contract").

Thus, in determining the meaning of a contract's arbitration provision, we are guided by these familiar principles of contract law. "A court's objective in construing a contract is to determine the intent of the parties." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 320 (2019). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). The "court's task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2011)).

"To the extent that there is any ambiguity in the expression of the terms of a[n] . . . agreement, a hearing may be necessary to discern the intent of the

parties at the time the agreement was entered and to implement that intent." Quinn, 225 N.J. at 45. "A contract is ambiguous if its terms are 'susceptible to at least two reasonable alternative interpretations.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). No party contends the Agreement is ambiguous.

The motion court based its denial of Vella's motion on Atalese and "the plain wording" of the Agreement. We address first the court's application of Atalese. The Court in Atalese recognized that "an average member of the public may not know – without some explanatory comment – that arbitration is a substitute for the right to have one's claim adjudicated in a court of law." 219 N.J. at 442. The Court held that to accomplish the waiver of that right, the language of an arbitration clause "must be clear and unambiguous that a consumer is choosing to arbitrate disputes rather than have them resolved in a court of law." Id. at 447. In Atalese, "[t]he consumer context of the contract mattered." Kernahan, 236 N.J. at 320 (citing Atalese, 219 N.J. at 444).

In County of Passaic v. Horizon Healthcare Services, Inc., 474 N.J. Super. 498, 501 (App. Div. 2023), we considered an arbitration provision in a contract between a county and a corporation. We declined to apply "Atalese's

8

requirement of an express waiver of the parties' right to seek relief in a court of law" because the parties in that case were "sophisticated and possess[ed] relatively equal bargaining power." Id. at 502. We reach the same conclusion here. We have no reason to believe these two lawyers lacked the sophistication to understand the import of arbitration, and neither contend they had unequal bargaining power in entering the Agreement.

Thus, to dismiss this case and compel arbitration, Vella does not have to establish the Agreement contained "an express waiver of the parties' right to seek relief in a court of law." Id. at 502. But she still must demonstrate the parties had a "meeting of the minds" in which they agreed to adopt a requirement to arbitrate. NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011) (quoting Pinto v. Spectrum Chems. & Lab. Prods., 200 N.J. 580, 600 (2010)); see also Kernahan, 236 N.J. at 319 ("As a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered"). And that she cannot do based on the plain language of the Agreement.

"The word '"may" generally conveys that an action is permissive, not mandatory.'" State v. A.M., 252 N.J. 432, 451 (2023) (quoting Myers v. Ocean City Zoning Bd., 439 N.J. Super. 96, 101 (App. Div. 2015)); see also C.L. v.

Div. of Med. Assistance & Health Servs., 473 N.J. Super. 591, 601 (2022) (finding a contract clause using "may" contained "permissive language"). "The term 'ordinarily reflects an intent to confer discretionary authority.'" A.M., 252 N.J. at 451 (quoting Linden Democratic Comm. v. City of Linden, 251 N.J. 415, 428 (2022)). "'Must' and 'shall,' by contrast, 'are generally mandatory.'" Ibid. (quoting Harvey v. Essex Cnty. Bd. of Freeholders, 30 N.J. 381, 391 (1959)). We recognize, though, the ordinary usage of these words "is merely an aid in determining" the meaning of a contractual clause and is not a fixed rule. Linden, 251 N.J. at 428 (quoting State v. Ercolano, 335 N.J. Super. 236, 244 (2000)).

Paragraph 23 of the Agreement provided that "[i]n the event of a dispute among the Shareholders, the Shareholder[s] agree to conduct good faith negotiations in order to settle the dispute." (Emphasis added). That's the first step. Next, it states "[i]f the dispute cannot be settled within 30 days, the Shareholders agree to submit the dispute to mediation before a mutually-agreed upon mediator." (Emphasis added). In the rest of the paragraph, the parties did not use the mandatory "agree to" phrase but instead used "may": "If mediation proves unsuccessful within 45 days of submission of the dispute, the Shareholder may submit the dispute to binding arbitration before a mutually-agreed upon Arbitrator. If the parties cannot agree to a mediator/arbitrator, the

dispute <u>may</u> be submitted to JAMS using the procedures outlined by JAMS."

(Emphasis added).

In <u>Medford Township School District v. Schneider Electric Buildings</u>

<u>Americas, Inc.</u>, 459 N.J. Super. 1, 8 (App. Div. 2019), we considered "whether

the terms of the arbitration clause permit or mandate arbitration."  Like the

Agreement, the contractual provisions at issue in <u>Medford</u> contained mandatory

and permissive terms.  <u>Id.</u> at 4.  We held the arbitration clause was permissive

and not mandatory.

> [W]e agree with the trial judge that the . . . arbitration provision was permissive and not mandatory.  As the judge correctly observed, the parties specifically used the term, "shall" when they intended certain provisions of the [contract] to be mandatory.  Had the [parties] intended to resolve their disputes by mandatory arbitration, the [contract] should have explicitly so stated.  Instead, use of the permissive term, "may" underscored their intention that the arbitration provision was permissive.
>
> [<u>Id.</u> at 12.]

We reach the same conclusion here.  The parties used the phrase "agree

to" in the first two sentences of paragraph 23, indicating clearly their agreement

to require the parties to conduct good-faith negotiations concerning a dispute

and then to submit the dispute to mediation.  Instead of using the phrase "agree

to" in the sentences about arbitration, the parties used "may."  Had they intended

11

to require submission of the dispute to binding arbitration after a failed mediation, they could have and should have explicitly stated so by using "shall" or even continuing to use the phrase "agree to."  But they didn't.  Instead, they used the word "may."  The plain language of the Agreement convinces us arbitration was permissive and not mandatory.

Paragraph 33, the "Enforcement" clause of the Agreement, does not require a different conclusion.  Paragraph 33 is expressly premised on the submission of a dispute "to Dispute Resolution <u>as defined in Paragraph 23</u> . . . ."  (Emphasis added).  Paragraph 33, thus, does not create arbitration rights separate and apart from what is provided in paragraph 23, which is the "Dispute Resolution" clause of the Agreement.  Paragraph 33 simply confirms the parties' agreement that an arbitrator's enforcement of specific-performance provisions of the Agreement would not prevent a party from seeking compensatory or punitive damages.

Our interpretation of the Agreement does not render "superfluous or nonsensical" any portion of paragraphs 23 or 33.  As we held in <u>Riverside Chiropractic Group v. Mercury Insurance Co.</u>, 404 N.J. Super. 228, 237 (App. Div. 2008):

> The contract clearly states that a . . . dispute "<u>may</u> be submitted to dispute resolution" . . . .  (Emphasis

A-1458-23

added).  The use of the term "may" clearly gives plaintiff the option of filing for arbitration, but does not require it to do so.  In other words, had plaintiff opted to file its claim . . . initially in the trial court, nothing in the contract language would have forbidden the suit from going forward.

Like the dispute-resolution provision in the contract in Riverside, the dispute-resolution provision of the Agreement gave a shareholder, after following the mandatory and agreed-to negotiation and mediation procedures, the right to submit his or her dispute to arbitration but did not impose the obligation to do so.

Based on our de novo review of the record, we agree with the trial judge that the arbitration provision was permissive and not mandatory.  Accordingly, we affirm the order denying Vella's motion to dismiss.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1458-23