**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1985-24

HILIL NICKERSON,

     Plaintiff-Respondent,

v.

BRINK'S INCORPORATED,
LISA JOHNSON and LISA
DUFFY,

     Defendants-Appellants,

and

CHRIS GHIRTSOS,

     Defendant.

_____

Argued September 16, 2025 – Decided November 24, 2025

Before Judges Currier, Smith, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-7307-24.

Michael J. Nacchio argued the cause for appellants (Ogletree, Deakins, Nash, Smoak & Stewart, PC,

attorneys; Jocelyn A. Merced, Erin N. Donegan and Michael J. Nacchio, on the briefs).

Thomas A. McKinney argued the cause for respondent (Castronovo & McKinney, LLC, attorneys; Thomas A. McKinney, of counsel and on the brief; Anais V. Paccione, on the brief).

PER CURIAM

Defendant Brink's Incorporated (Brink's) appeals from a Law Division order denying its application to dismiss plaintiff's Law Against Discrimination complaint and to compel arbitration. Because plaintiff's employment agreement is clear and unambiguous that all employment claims must be submitted to mandatory arbitration, we reverse.

I.

A.

Shortly before beginning his employment with Brink's and as part of Brink's on-boarding process, plaintiff Hilil Nickerson electronically signed a "Mutual Arbitration Agreement" (MAA). That document described the mandatory and binding arbitration procedure implemented to resolve disputes between employees and Brink's including, but not limited to

> [c]laims involving harassment, discrimination, or retaliation of all types; claims under Title VII of the Civil Rights Act of 1964, 40 U.S.C. § 1981, the Americans with Disabilities Act, and the Age

Discrimination in Employment Act; claims for worker's compensation retaliation; leave-related claims, including any alleged violation of the Family and Medical Leave Act; claims related to wages or meal or rest periods, including claims under the Equal Pay Act or Fair Labor Standards Act; claims related to the timeliness of wage payment or paycheck requirements; claims for incentive compensation, benefits, or the denial thereof, including claims brought pursuant to the Employee Retirement Income Security Act (after exhaustion of plan remedies) or for compensation of any type; claims regarding any background check or drug test or any document or process related to either; tort claims, including libel, slander, false imprisonment, misrepresentation, negligence or negligent hiring, training, supervision, or retention; claims for breach of contract or policy; and the alleged violation of any other federal, state, or local statute, regulation or common law.

The MAA only excluded

(i) claims for state insurance benefits . . . (ii) claims for which this Agreement would be invalid as a matter of federal law or state law that is not preempted by federal law; and (iii) actions to enforce this Agreement, compel arbitration, or enforce or vacate an arbitrator's award under this Agreement as to which the parties agree and stipulate that such actions are covered by Sections 2-16 of the Federal Arbitration Act (FAA), 9 U.S.C. § 2-16, and not any other section of the FAA or state law . . . .

In a section specifically labeled "Option to Opt Out of Agreement," plaintiff had the "right to opt out of this [MAA] within [thirty] days from the date [plaintiff] sign[ed] this Agreement." This section also provided

3

instructions as to how to do so.  The clause also noted plaintiff's "employment status w[ould] not be affected if [he] decided to opt out of this Agreement."

At the conclusion of the document, a segment titled "Understanding and Acknowledgement" appeared.  In it, plaintiff "warrant[ed] and agree[d]" that he

> [r]ead and underst[ood] this Agreement and [] had the opportunity to consult with an attorney of [his]choosing regarding the effect of this Agreement to the extent [he] deem[ed] necessary.  By signing this Agreement, [he] acknowledge[d] that [he was] knowingly and voluntarily waiving the right to file a lawsuit in court relating to [his] employment with Brink's and related entities and persons, as well as the right to resolve disputes in a proceeding before a judge or jury, except as described above.

The following language concluded the document, in capital letters:

> BY SIGNING THIS AGREEMENT, YOU WAIVE YOUR RIGHT TO A JURY TRIAL AND INSTEAD AGREE THAT ANY CLAIMS WILL BE DECIDED IN THE ARBITRATION FORUM.

This agreement was later modified and reflected changes not pertinent to this appeal.  Plaintiff signed the revised agreement as well.

## B.

During his employment, plaintiff discovered that supervisors and coworkers—including his then manager, defendant Ghirtsos—exchanged

A-1985-24

messages in a group chat which contained explicit, derogatory, sexist, and racist remarks, including specific references to plaintiff. Some messages also specifically referenced female coworkers. Plaintiff, an African American, alleges that he and other coworkers were the subject of these comments, including remarks made directly by Chris Ghirtsos. When plaintiff learned of the messages, he lodged complaints with defendants Lisa Duffy and Lisa Johnson, both human resources directors. He asserts they neither addressed his concerns nor disciplined those involved.

In a two-count complaint filed under the New Jersey Law Against Discrimination (NJ LAD), N.J.S.A. 10:5-1, to -50, plaintiff alleged Brink's subjected him to a racially hostile work environment (count one) and accused individual defendants Ghirtsos, Duffy, and Johnson of aiding and abetting the creation of that atmosphere (count two). See N.J.S.A. 10:5-12(e).

In response, Brink's moved to dismiss the complaint and to compel arbitration based on the MAA. In a brief oral decision, the trial court summarily denied the motion and noted its concerns about the plaintiff's knowing and voluntary waiver of his right to disposition of this matter before the court and whether the agreement was properly explained to him. The court

also noted the MAA "doesn't indicate what, in fact, claims are covered by this particular agreement."

Brink's appealed.

II.

We review a trial court's denial of a motion to dismiss de novo. AC Ocean Walk, LLC v. Am. Guarantee & Liab. Ins. Co., 256 N.J. 294, 310 (2024). Because the enforceability of an arbitration agreement is a question of law, we also review de novo a trial court's order to grant or to deny a motion to compel arbitration. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020). Consequently, we owe "no special deference" to the legal determinations of the trial court. AC Ocean Walk, 256 N.J. at 310. To that end, when considering orders to compel arbitration, we acknowledge the "strong preference to enforce arbitration agreements . . . ." Lahoud v. Anthony & Sylvan Corp., 481 N.J. Super. 29, 40 (App. Div. 2025) (quoting Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). "'[T]he affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes.'" Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133 (2020) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002)). "Because of the favored status afforded to arbitration, '[a]n agreement to arbitrate should be read

A-1985-24

liberally in favor of arbitration.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001) (quoting Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993)).

Here, the trial court found there were "substantial issues of operative fact[s]," including that the agreement did not specify the claims it covered , the arbitration agreement was not explained to plaintiff, and plaintiff did not understand what he was signing. We disagree.

Following our de novo review, we conclude the MAA was both clear and unambiguous, was entered into with mutual assent, and is enforceable in light of these fundamental principles that govern arbitration agreements.

A.

Arbitration agreements are contracts. Lahoud, 481 N.J. Super. at 41. Therefore, we must "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." Flanzman, 244 N.J. at 132 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)). To effect this goal, "[a]s with other contractual provisions, courts look to the plain language the parties used in the arbitration provision." Medford Twp. Sch. Dist. v. Schneider Elect. Bldgs. Ams., Inc., 459 N.J. Super. 1, 8 (App. Div. 2019) (citations omitted). "A basic tenet of contractual

interpretation is that contract terms should be given their plain and ordinary meaning." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 321 (2019) (citing Roach v. BM Motoring, LLC, 228 N.J. 163, 174 (2017)).

"An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law." Skuse, 244 N.J. at 48 (citing Atalese v. U.S. Legal Servs. Group, L.P., 219 N.J. 430, 442 (2014)). "Thus, 'there must be a meeting of the minds for an agreement to exist before enforcement is considered.'" Ibid. (quoting Kernahan, 236 N.J. at 319). "Mutual assent requires that the parties have an understanding of the terms to which they have agreed." Atalese, 219 N.J. at 442. "By its very nature, an agreement to arbitrate involves a waiver of a party's right to have [their] claims and defenses litigated in court." NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011). "An effective waiver requires a party to have full knowledge of [their] legal rights and intent to surrender those rights." Knorr v. Smeal, 178 N.J. 169, 177 (2003) (citing W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 153 (1958)).

"'[A] party who enters into a contract in writing, without any fraud or imposition being practiced upon [that party] is conclusively presumed to understand and assent to its terms and legal effect.'" Kernahan, 236 N.J. at 321

A-1985-24

(quoting Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353 (1992)). Lack of knowledge of the law cannot be used to nullify an arbitration clause's clear and explicit language. Cf. Arafa v. Health Express Corp., 243 N.J. 147, 165 (2020) ("'[A]greements to arbitrate [can] be invalidated by 'generally applicable contract defenses, such as fraud, duress or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'") (quoting Concepcion, 563 U.S. at 339)

"No particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." Atalese, 219 N.J. at 444. Because "[n]o magical language is required to accomplish a waiver of rights in an arbitration agreement", a specific reference to the NJ LAD or any other statutory claims is not required to render the parties' agreement as enforceable or not. See Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016); see also Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 606 (App. Div. 2015) ("[A]n arbitration clause need not identify 'the specific constitutional or statutory right[s] guaranteeing a citizen access to the courts' that are being waived . . . ." (quoting Atalese, 219 N.J. at 447)). All that it must do is "convey that parties are giving up their right to bring their claims in court or have a jury resolve

their dispute." Barr, 442 N.J. Super. at 606. The mechanism to accomplish this need only be expressed in "'some general and sufficiently broad way. . . .'" Barr, 442 N.J. Super. at 606 (quoting Atalese, 219 N.J. at 447).

B.

In both form and substance, we conclude the MAA is effective because it is clear and passes jurisprudential muster.

The MAA is a stand-alone document that existed apart from the other on-boarding documents considered and executed by plaintiff before he began his employment with Brink's. The multi-page document is comprehensive, but, despite its length, its language is plain and direct. Near the top of the MAA, and set apart by bold face type, plaintiff and Brink's "voluntarily waive[d] all rights to a trial in court before a judge or jury on all claims covered by this agreement."

Those claims are specifically described on the second page of the MAA in a section premised by this bold-faced and capitalized title: "CLAIMS SUBJECT TO ARBITRATION." Under this section, the parties mutually "agree to submit all legally cognizable claims between [them] to binding arbitration." "Claims covered by this Agreement include, but are not limited

10

to, claims involving harassment, <u>discrimination</u>, or retaliation of all types. . . ." (emphasis added).

The document includes detailed information about the "ARBITRATION PROCEDURE." The prospective employee also has the ability to opt out of the MAA under the titled "OPTION TO OPT OUT OF THE AGREEMENT."

The MAA concludes with plaintiff's assertion, through his signature, that he "warrant[ed] that [he] read and underst[ood] this Agreement and had the opportunity to consult with an attorney of [his] choosing regarding the effect of this Agreement to the extent [he] deem[ed] necessary."

In that same paragraph, plaintiff made an affirmative declaration that [he] "acknowledge[d] that [he was] knowingly and voluntarily [waiving] the right to file a lawsuit in court relating to [his] employment with Brink's and related entities and person, as well as the right to resolve disputes in a proceeding before a judge or jury, except as described above."

Finally, at the conclusion of the document, plaintiff unambiguously acknowledged, produced in all capital letters, "BY SIGNING THIS AGREEMENT, YOU WAIVE YOUR RIGHT TO THE JURY TRIAL AND INSTEAD AGREE THAT ALL CLAIMS WILL BE DECIDED IN THE ARBITRATION FORUM."

11

A-1985-24

The plain language of the MAA clearly demonstrates its intent to establish a mutually beneficial relationship through alternative dispute resolution, and plaintiff—as a prospective employee—was sufficiently informed of its purpose and scope, given the opportunity to consult an attorney before signing, and allowed to opt out without affecting his employment status.

We reverse the trial court's decision and remand for the entry of an order dismissing plaintiff's complaint and ordering the matter to be submitted to arbitration. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1985-24